BARHORST *et ux.* v. ARMSTRONG *et al.*

(*Circuit Court, S. D. Ohio, W. D.* March 29, 1890.)

1. EQUITY—MARSHALING ASSETS—JUDGMENT.
   On injunction to restrain the enforcement of a judgment on a note, against the maker, it appeared that the payee, before maturity, transferred it to a bank as collateral; that the maker, in ignorance of the fact, paid it to the payee, without receiving the note, upon his representation that he had forgotten to bring it. After maturity, the bank, pursuant to an agreement with a person who knew that it was up as collateral, obtained judgment on it, and assigned the judgment and all other collateral paper to him, on his paying the principal debt. Among the collaterals were notes, on which this person was a surety, for a greater amount than the principal debt. *Held,* that equity required the bank to resort first to the other collaterals which it held, and this equity was not changed by reducing the note to judgment, and that the assignee got no greater rights than the bank had, and therefore could not collect the judgment, whether the transaction be considered as a purchase by him, or as a part payment of his own obligation.

2. INJUNCTION—NEGLECT OF ATTORNEY.
   The fact that an attorney engaged to defend a suit neglects to do so is no ground for enjoining the enforcement of the judgment; the only remedy of the judgment debtor, if he was damaged, is against the attorney.

In Equity.

Bill for an injunction filed by Harmon Barhorst and Mary Barhorst, his wife, against David Armstrong, receiver of the Fidelity National Bank of Cincinnati. Moses F. Brown, L. F. Brown, and Alfred Hill.

*C. H. Blackburn,* for complainants.

*Hill & Stricker* and *Paxton & Warrington,* for defendants.

SAGE, J. This suit is upon an ancillary bill filed by complainants to restrain further proceedings upon a judgment for $500, recovered in this court by David Armstrong, receiver of the Fidelity National Bank, against the complainants, upon their promissory note dated June 9, 1887, and payable 10 months after date to the order of Moses F. Brown. The complainants set forth that they fully paid said note before its maturity to Moses F. Brown, and that Brown, with intent to defraud, failed to deliver it to them upon its payment, and transferred it to David Armstrong, as receiver of the Fidelity National Bank, as collateral security; that Armstrong, with knowledge that the note had been paid before maturity, after it had become due entered into an agreement with L. F. Brown, who had notice of the payment of the note, whereby he was to assume and pay the indebtedness of Moses F. Brown to the Fidelity National Bank for the payment of which the note above referred to and other notes were held by Armstrong as collateral; that it was further agreed that said

receiver was to recover judgment against complainants on said $500 note, and assign the same to L. F. Brown, and that the suit was accordingly brought in this court by the receiver against the complainants and Moses F. Brown; and that the complainants had a complete defense, of which the receiver and said Brown had due notice. The complainants further aver that they employed Edwin J. Franks, an attorney at law, to present their defense, and relied and depended upon him to represent them in the case; that they had no knowledge that they were in default, or that the judgment was rendered against them, until after the term at which it was rendered, and after their property had been seized in execution; that after the rendition of the judgment, and the issuance of the execution thereon, to-wit, about the 8th day of October, 1888, Armstrong assigned said judgment to Alfred Hill as attorney for L. F. Brown; that said L. F. Brown is a brother of said Moses Brown, and in his action herein was in concert with said Moses Brown with intent to cheat and defraud the complainants, and that said Alfred Hill, attorney, had full and complete notice of the equities of complainants in the bill set forth. The complainants further aver that, unless prevented, said Hill will sell their property seized in execution as aforesaid, which is all the property owned by them, and if thus taken will leave them destitute; also, that said L. F. Brown and Moses F. Brown are insolvent and pecuniarily irresponsible. Wherefore complainants pray that the defendants be enjoined from further proceedings upon said judgment, and from selling said property; that the judgment be declared and held to be null and void as to complainants, and their property be released from said execution. The answer of the defendants denies payment of the $500 note, or notice thereof to L. F. Brown or Alfred Hill, or that the complainants had a defense to the action brought thereupon by Armstrong, or that they were acting with Moses F. Brown in any attempt to cheat or defraud complainants. It further avers that the complainants were notified by defendants, before said note was due, that the same was held by David Armstrong, receiver; and that before the maturity of said note L. F. Brown agreed with said receiver to purchase the collateral and principal notes held by him as receiver, and pay the indebtedness of Moses F. Brown upon the principal notes, said Armstrong agreeing to recover judgment upon said $500 note, and assign said judgment to L. F. Brown. They further answer that on the 8th day of October, 1888, L. F. Brown purchased the judgment upon said $500 note from Armstrong, receiver, and they deny that L. F. Brown is insolvent, and aver that he is reasonably worth the sum of $30,000, over and above his debts and liabilities.

Upon the hearing it appeared from the record that, when Armstrong assumed the duties of receiver of the Fidelity National Bank, Moses F. Brown was indebted to the bank upon his discounted notes in the sum of $3,000; that in September, 1887, in response to the demand of the receiver, Moses F. Brown hypothecated as additional security for the payment of his indebtedness to the bank, the $500 note made to him by the complainants, with other promissory notes. From time to time, by

the sale of collateral notes and by payment on the original discounted notes, the indebtedness was reduced to about $1,400, in April, 1888; at which time Hill, as attorney for L. F. Brown, agreed with Armstrong to purchase all the discounted notes and collaterals, and pay the indebtedness of $1,400, Armstrong agreeing, in consideration therefor, to put the Barhorst note for $500 into judgment, and assign the judgment to Hill as attorney for L. F. Brown. This agreement was carried into effect. The judgment was rendered upon the note in August, 1888, which was in the April term of the court. On the 8th day of October, 1888, Alfred Hill, for L. F. Brown, paid to Armstrong the sum of $987, the balance then due from Moses F. Brown to the Fidelity National Bank, including the costs in the action upon the Barhorst note, and on the same day the receiver assigned said judgment to Alfred Hill, as attorney for L. F. Brown. It further appeared that while the $500 note was in the hands of Armstrong, as collateral security, it was paid by Barhorst and wife to Moses F. Brown, as is evidenced by his receipts. When the last installment of the payment was made, Mrs. Barhorst, who conducted the transaction for herself and husband, demanded the note, and was answered by Moses F. Brown that he had forgotten it, and left it in the city, but would bring it out to her the next day, whereupon she paid him the balance due. The next day he informed her that the note was in the hands of Armstrong as collateral, which was the first intimation which she or her husband had of that fact. Shortly afterwards Barhorst and wife learned that another note, purporting to be signed by them, for the sum of $207.50, was in the hands of Armstrong, also as collateral for the notes upon which Brown was indebted. That note was forged. Brown was charged with its forgery and arrested. The forged note was indorsed by Moses F. Brown and by L. F. Brown, and was turned over to Hill as attorney for L. F. Brown, by Armstrong, in pursuance of the arrangement between them. Among the collaterals held by Armstrong was also a note for $750, made by L. F. Brown to the order of Moses F. Brown, and indorsed by him. This note bore interest, and at the time of the payment of the $987, by L. F. Brown to Armstrong, as above set forth, about 15 months' interest, at 6 per cent., had accrued upon it.

With reference to the employment of Franks as attorney for Barhorst and wife, to defend the action upon their $500 note, the evidence is not satisfactory. The complainants themselves did not testify positively to such employment. But it does appear that Franks looked into the case, and came to the conclusion that there was no defense, and therefore did not undertake to make any answer. It is clear that Franks was right in his view of the case. There was no defense to the action. It is true that the amount due upon the note had been paid to Moses F. Brown. That was a full acquittance as between Barhorst and wife and Moses F. Brown, but it did not affect the rights of Armstrong, to whom the note had been transferred, and, as Barhorst and wife paid the note without having it delivered up to them, they did so at the risk of having to pay it over again to Armstrong. Whether or not Franks attempted a defense to the action upon the note is wholly immaterial. The judg-

ment upon the note could not have been prevented by any defense. Barhorst and wife might, by bill in equity, have compelled Armstrong to exhaust all the other collaterals he held before resorting to the $500 note, which they had in good faith paid to Moses F. Brown. But, even if the failure of Franks to make any defense had deprived Barhorst and wife of the opportunity to prevent a judgment against them, that fact would not avail them at law or in equity against Armstrong. Their only remedy would have been against Franks, if he was in fact their attorney, for damages. If they did not employ him, and by reason of their own neglect allowed judgment to be taken by default, they would have to suffer the consequences. The averments that Armstrong had notice of the payment of the $500 note are negatived by the testimony. That note was transferred to him as collateral before its maturity, and before the first installment of the payment was made to Moses F. Brown, and he had no notice, at any time before the note was reduced to judgment, of its payment. The charges of the bill that L. F. Brown was a party to any fraud upon Barhorst and wife, or that he had knowledge or notice of the payment of the $500 note to Moses F. Brown, or that his attorney, Hill, had any such notice, are wholly unsustained by the evidence in the case. On the contrary, it appears that L. F. Brown and his brother, Moses F. Brown had quarreled, and were not on speaking terms at the time of the purchase and transfer of the judgment and notes from Armstrong. The charges of fraud against L. F. Brown and Hill, and of notice, may therefore be dismissed without further consideration.

This cause was submitted without argument. It seemed to be regarded by counsel as depending upon proof of notice and of fraud, as above referred to. But let us examine it a little more closely. That the collection of the $500 note by Moses F. Brown from Barhorst and wife was a gross fraud is not open to doubt. His statement when he received the last payment, and when the note was called for, that he had forgotten it, and left it in the city, was a false pretense as to an existing fact, which made the obtaining of that payment not only fraudulent, but criminal, and punishable under the statutes of Ohio by imprisonment in the penitentiary. As has been already stated, the payment of the note created an equity in favor of Barhorst and wife, which entitled them to require Armstrong to resort first to the other collaterals which he held. That equity was not destroyed by the reduction of the note to judgment. Armstrong's interest in the note was only to secure the principal notes. He had the right to take judgment upon the $500 note, but if the balance due on the principal note was paid without its being necessary to apply the judgment upon the $500 note, in whole or in part, the judgment would inure to the benefit of Moses F. Brown, for whom Armstrong would hold it in trust, and as against Moses F. Brown the equity of Barhorst and wife was complete.

Now, what was the transaction, so far as L. F. Brown was concerned? His contention is that he purchased the claim of the bank against Moses F. Brown. But can there be any doubt that the purchase was subject

to all equities that could have been asserted against the receiver? All the paper was past due. L. F. Brown knew that the collateral notes were held as such, and he can assert no claim which could not have been asserted by Armstrong. Let us go a step further. L. F. Brown and his brother, Moses F. Brown, were indorsers of the forged note for $207.-50, which was among the collaterals, and they thereby guarantied the genuineness of the forged signatures. He was therefore indebted upon that note. His own note for $750, with 15 months' interest, was also among the collaterals. His entire payment to Armstrong was $987, being less than the amount due by him upon the two notes last above referred to. What he calls a purchase was therefore secured by the payment of less than the amount due upon collaterals held by Armstrong on which he was personally liable, and which Armstrong might have been compelled by Barhorst and wife to exhaust before resorting to the $500 note which they had paid to Moses F. Brown. It has the look of a thrifty expedient to pay off his own indebtedness at less than its face, and to get in addition a judgment for $500 against Barhorst and wife, secured by a levy upon all their property, and they the intended victims of his own brother's most outrageous fraud, proven by conclusive and uncontradicted evidence. If it was a purchase it was subject to equities. If the transaction be treated as nothing more than a payment, in part, of his own obligations which were held by Armstrong as collateral, the transfer of the judgment placed him in no better position than Armstrong occupied. In either view, the equity of the complainants against his claim upon the judgment is strong enough to extinguish it. Conceding that L. F. Brown was free from fraud in the transaction, it results, nevertheless, that he has taken nothing against Barhorst and wife by his purchase of the judgment against them, and that, so far as they are concerned, the judgment must be canceled. The decree will find the facts in accordance with this opinion, and will direct the cancellation of the judgment as against Barhorst and wife, leaving it to stand against Moses F. Brown. L. F. Brown will be required to pay all the costs which have been incurred upon that judgment since its rendition, as well as the costs of this proceeding.