14 N.J. Super. 591 (1951)
82 A.2d 652
IN THE MATTER OF THE APPLICATION OF ALVIN CARTER FOR ISSUANCE OF WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided July 27, 1951.
*592 Mr. David Deitz, attorney for petitioner, in forma pauperis.
Mr. Richard J. Congleton, Prosecutor of the Pleas of Essex County (Mr. C. William Caruso, Assistant Prosecutor, appearing) and Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey (Mr. Eugene T. Urbaniak, Deputy Attorney-General, appearing), for the State.
HUGHES, J.C.C.
On the basis of a verified petition factually supporting his claim that he is illegally detained in *593 the New Jersey State Prison, the petitioner, Alvin Carter, applied for and there issued the writ of habeas corpus. By its return, the State admitted its imprisonment of petitioner since May 3, 1945, justifying it and the continuance thereof by virtue of "five consecutive indeterminate sentences imposed upon him in the County of Essex for five charges of Breaking, Entering, Larceny and Receiving, said sentences having a seven-year indeterminate maximum and having been imposed on May 3, 1945, to run consecutive one after the other."
The hearing on the writ developed that petitioner was born February 19, 1927, in Washington, D.C., and at the time of his arrest and sentences was a little over 18 years of age. He was an uneducated Negro youth, and as appears by Exhibit P-1, a copy of the pre-sentence report of the probation department, was of practically moron-grade intelligence.[1] Counsel for petitioner and for the State stipulated at the hearing that such report accurately represented his mental condition at the time of plea and sentence.
Carter was arrested on March 22, 1945, on a complaint and warrant charging a single offense of breaking, entering and larceny. At the hearing on the writ, he testified that he was interrogated over a period of several days at police headquarters by detectives, and he insists that he told these questioners that he had committed only the one crime for which he had been arrested. Nevertheless, he was charged with 13 additional offenses of similar character and on this total of 14 charges he faced the former Essex County Court of Special Sessions on April 9, 1945. He had signed the appropriate waivers of indictment and trial by jury under R.S. 2:191-1.
The docket entries of the clerk of April 9, 1945, evidence that petitioner entered non vult pleas to each of these 14 separate charges. Petitioner testifies that he was then, and is now, unable to read and write; that he understood nothing of the significance of such pleas; and that whatever was then said, he did not profess his guilt of the additional 13 charges. *594 There is no stenographic transcript available. The petitioner claims that he was ignorant of the meaning of the waivers by which he had relinquished his important rights to indictment and trial by jury.
Neither on the entry of his pleas, nor on the later imposition of sentences was petitioner represented by counsel. There is no suggestion that he applied to the court to assign counsel to him as an indigent person, nor that the court declined to assign counsel to him, nor, indeed, that there was any discussion of counsel, and it is quite clear to me under the circumstances that petitioner was ignorant of his right to counsel. This situation, of course, would not occur presently in view of the existing rule of court.[2]
On April 25, 1945, petitioner appeared in the same court for sentencing. As evidenced by the list of causes retained by the clerk as his office record, and the commitments based thereon, the court imposed on five of these charges separate sentences to the New Jersey Reformatory at Annandale, ordering that such sentences should run consecutively one to the other. On the remaining charges, the court suspended imposition of sentence. Again, there is no stenographic transcript of any remarks which the judge may have made on the imposition of these individual sentences. The petitioner swears that all he remembers of this fateful occasion is that the judge addressed him and said, "Alvin, I am going to send you back to Annandale." (Petitioner had previously been a juvenile offender committed to the State Home for Boys at Jamesburg and transferred for a time to Annandale and later paroled.) However, the record, with all its deficiencies, as supported by commitments in regular order, establishes that these five sentences were actually imposed and so ordered to run consecutively.
*595 The petitioner entered the New Jersey Reformatory at Annandale on May 3, 1945, was subsequently transferred to the New Jersey Reformatory at Rahway on September 4, 1945, and was later transferred to the New Jersey State Prison on July 20, 1948, where he now remains. These transfers are fully authorized by law. R.S. 30:4-85, N.J.S.A.
Scrutiny of the legal effect of these sentences points up their very substantial aggregate maxima. An "institutional" sentence, so-called, to the Annandale reformatory is that type established by R.S. 30:4-152,[3] having no minimum term but a potential maximum equivalent to the statutory maximum for the offense involved, which, in the case of breaking and entering (R.S. 2:115-1, et seq.), a high misdemeanor, amounts to 7 years. R.S. 2:103-5. When contrasted with the type of sentence to the State Prison prescribed by law, which requires the imposition of a fixed minimum term (R.S. 2:192-4), the legislative formula for the "institutional" type sentence accentuates the theory of training and social rehabilitation, with termination of service dependent, inter alia, upon its accomplishment, over and above the more normal incidents of imprisonment implicit in sentences to the State Prison. In re Zienowicz, 12 N.J. Super. 563 (Cty. Ct. 1951).
It may not be doubted that the distinguished and learned judge who imposed these sentences was well disposed toward this petitioner, in the sense that he saw in the defendant then before him an errant youth, apparently an accomplished and habitual burglar, and one in obvious need of the training and rehabilitation technique peculiarly available at a restricted *596 reformatory-type institution such as Annandale.[4] Despite their consecutive nature, it is a permissible assumption that such judge intended primarily by these sentences to subject this petitioner to a period of detention adequate to accomplish this rehabilitation, for implied in the very sentences was the statutory formula for release upon the apparent attainment of such reform. In re Zienowicz, supra.
In view of the fundamental questions raised in the instant proceeding, however, the presumptive good intent of the sentencing judge in what he hoped to accomplish by these sentences, loses significance. Thus depersonalized, it is starkly apparent that these sentences accommodate an aggregate maxima of 35 years, reducible only by time credits available under R.S. 30:4-92, and not by the much more substantial incentive credits established by R.S. 30:4-140. In re White, 10 N.J. Super. 600 (Cty. Ct. 1950); In re Zienowicz, supra. And while not legally significant, the possible enormity of such penalty brings into very sharp focus the claimed constitutional defects in the course of the proceedings which culminated therein.
In total concept there can be no doubt that this prisoner's treatment in the courts of law effectually, albeit unintentionally, divested him of the benefits of his constitutional right to the assistance of counsel. The 1844 New Jersey Constitution provided in Article I, paragraph 8, that:
"In all criminal prosecutions the accused shall have the right * * * to have the assistance of counsel in his defense."
*597 R.S. 2:190-3 provides:
"The court before which any person shall be tried upon indictment shall, if he is not able to procure counsel, assign to him counsel, * * *."
The Sixth Amendment to the Federal Constitution, similarly, assures the accused, in all criminal prosecutions, of the right to have the assistance of counsel in his defense. Although such Amendment applies only to trials in the federal courts and has, in itself, no application to the states, and while the due process clause of the Fourteenth Amendment does not incorporate, as such, the specific guarantees found in the Sixth Amendment, it is undoubted that a denial by a state of rights or privileges specifically embodied in that and others of the first eight amendments may, in certain circumstances, or in connection with other elements, operate, in a given case, to deprive a litigant of due process of law in violation of the Fourteenth Amendment. While due process of law is secured against state invasion by the Fourteenth Amendment, it has been commented that its language formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application has been viewed less as a matter of rule than as a matter of principle. An asserted denial of due process is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may in other circumstances, and in the light of other considerations, fall short of such denial. Powell v. Alabama, 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct. 55 (1932); Betts v. Brady, 316 U.S. 455, 86 L.Ed. 1595, 62 S.Ct. 1252 (1941).
In assessing the "totality of facts" shown in the instant case, it must be conceded that this defendant stood alone and powerless before the court. Little more than a juvenile offender, he was, as stated, completely illiterate, even lacking in a basic intelligence, which, without advice of counsel, could possibly have informed him of the implications of the waiver *598 of his essential rights to indictment and trial, as well as the pleas of non vult and the admissions of guilt expressed thereby. There is no pretense that he knew of his right to counsel, or that he was "court-wise" in the sense of that sophistication in criminal litigation which guides the more experienced offender and casts doubt upon later protestations of ignorance and disadvantage. State v. Longo, 133 N.J.L. 301 (E. & A. 1945).
Our courts have held that the right to counsel is not abridged by the mere failure to assign counsel, and that failure to request such assignment justifies a presumption of waiver of the privilege. State v. Raney, 63 N.J.L. 363 (Sup. Ct. 1899); State v. Murphy, 87 N.J.L. 515 (E. & A. 1915). But this presumption of waiver is clearly overcome in the instant circumstances, in which common justice must deny its validity in any realistic sense.
The factual posture of the present case seems to me to spell out a deprivation of rights, bringing into play the special circumstances involved in the case of Gibbs v. Burke, 337 U.S. 773, 93 L.Ed. 1686, 69 S.Ct. 1247 (1949). In that case, defendant was forced to actual trial without counsel and in the course of trial inadmissible hearsay and other incompetent evidence was admitted. In other respects, according to the holding of the court on appeal, that petitioner was handicapped by lack of counsel to such an extent that his constitutional right to a fair trial was denied. It is, of course, not only in the case of an actual trial on the merits that counsel is required to meet the fundamental safeguards implicit in the United States Constitution. There are cases in which the absence of counsel works serious harm to the rights of the defendant, even though that defendant enters a formal and otherwise legally adequate plea of guilty to the particular charge.
It is undoubted that recent decisions of the United States Supreme Court reflect some difference of opinion among the judges of that court, as commented upon by Mr. Justice Reed in the majority opinion of Uveges v. Pennsylvania, 335 *599 U.S. 437, 93 L.Ed. 127, 69 S.Ct. 184 (1948). Some members of this court believe that where serious offenses are charged, failure of a court to offer counsel in state criminal trials deprives an accused of rights under the Fourteenth Amendment. They are convinced that the services of counsel to protect the accused are guaranteed by the Constitution in every such instance and that the court can dispense with counsel only when the accused refuses counsel with an understanding of his rights thereto. Others on the court believe that when a crime subject to capital punishment is not involved, each case depends on its own merits. Where the gravity of a crime and other factors, such as the age and education of the defendant, the conduct of the court and the prosecuting officials and the complicated nature of the offense charged and the possible defenses thereto, render criminal proceedings without counsel so apt to result in injustice as to be fundamentally unfair, in such case even the latter group of judges believes that the accused must have legal assistance under the Amendment, whether he pleads guilty or elects to stand trial, whether he requests counsel or not. This latter view is reflected in the case of Betts v. Brady, supra, which case holds in effect that the Constitution does not guarantee to every person charged with a crime in a state court the right to the assistance of counsel, regardless of the circumstances. The tendency of this class of cases indicates that fairness in the disposition of the case is the touchstone.
Under the predominating view in the case of Uveges v. Pennsylvania, supra, the majority of the court believed that in the particular case then before it, the opportunity to have counsel was a necessary element of a fair hearing. By way of demonstration, it may be noted that in the Uveges v. Pennsylvania case, supra, the allegations of the petition which led the United States Supreme Court to issue its writ were, in sum, as follows:
(1) Petitioner was held for two weeks without being permitted to consult friends or relatives.
(2) Because of his youth (17 years), his ignorance and the complexity of the charges against him, petitioner was incapable of meeting them intelligently without assistance of counsel.
*600 (3) His request for legal aid to determine his plea was met with a threat of a severe sentence if the Commonwealth were put to the expense of a trial.
(4) He was promised by the district attorney a short sentence at a reformatory in exchange for a plea of guilty.
(5) He was not informed of the consequences of his plea of guilty, was unaware of its effect, and intended to plead guilty only to one of several indictments.
(6) Contrary to the assertions made to him by the district attorney for the inducement of such plea, the petitioner found himself in the Western State Penitentiary on sentences totalling a minimum of 20 and a maximum of 40 years.
While there is no approach in the present circumstances to the apparently oppressive treatment dealt with by the court in the case of Uveges v. Pennsylvania, supra, such as hostile conduct on the part of prosecuting officers of the court, it is clear that here this petitioner "because of his youth, his ignorance and the complexity of the charges against him, * * * was incapable of meeting them intelligently without assistance of counsel." And it is also quite evident that here, as in the Uveges case, supra, this petitioner "* * * was not informed of the consequences of his plea of guilty, was unaware of its effect, and intended to plead guilty only to one of several indictments." The decisions of the United States Supreme Court referred to, and others of recent trend, pose the question as to whether holdings of that court in such case amount to an absolute requirement (1) that in all cases in a state court, counsel must be assigned to represent a defendant offering a plea of guilty, or a plea equivalent thereto, unless such defendant is offered counsel and intelligently and fully waives his right thereto, or whether (2) such holding merely re-emphasizes the rule that the United States Constitution requires that a fair hearing be granted and under the facts of the particular case before it, the "opportunity to have counsel * * * was a necessary element of a fair hearing." I believe that the latter alternative is the meaning of the Uveges decision and that the provisions of the United States Constitution do not require that in all cases where a serious crime is charged in a state court counsel must be assigned or the right to counsel formally rejected and *601 waived, to validate an apparently conscious, deliberate and knowing plea offered to such charge.
The petitioner now before the court has established by the requisite measure of proof, however, that because of the lack of counsel, and the unfortunate lack of intelligence on his own part, he did not, nor could he have offered a conscious, deliberate and knowing plea to the charges facing him.
Under these circumstances, such lack of counsel, in view of the incapacity of the defendant for such reasons, destroyed the primary jurisdiction of the court in the very course of the proceedings. Johnson v. Zerbat, Warden, &c., 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019 (1938). While the latter case dealt with a trial in the United States District Court, bound by the Sixth Amendment to the United States Constitution, it is obvious that the same principle must be dispositive, under special circumstances as outlined above, of a like situation in a state court, for if the essential rights of a trial defendant to due process under the Fourteenth Amendment are not recognized in a state court in such case, those constitutional rights will be vindicated by application to the United States Supreme Court. Uveges v. Pennsylvania, supra.
It should be emphasized that the views above expressed deal with circumstances occurring before the promulgation of our present Rule 2:12-1, supra, and should not be understood as commenting upon the effect of such rule.
Nor should the decision of the court in this case be taken as presaging any abandonment of the principle of the case of In re Tremper, 126 N.J. Eq. 276 (Ch. 1939), which principle has led this court to deny relief on habeas corpus even in the face of apparent lack of jurisdiction in the sentencing court. This rule applies where the seeking of relief comes long after the expiration of the time for appeal, and, unexplained, constitutes an obvious attempt to claim jurisdictional error by way of "fraud and imposition" on the State. In re Zee, 13 N.J. Super. 312 (Cty. Ct. 1951). The present decision is based on the peculiar merits of the present case, which to my mind, would not justify the application of the Tremper rule.
*602 The petitioner, for the purpose of this application, has admitted his guilt and the validity of his sentence on one of the accusations involved, presumably the one on which he was first arrested and on which he admitted guilt to the police. He has served at least the equivalent of one maximum term, as reduced by work credits under R.S. 30:4-92, supra. Hence the following order deals only with the four additional sentences, which may be identified by later stipulation to be filed herein.
On such four sentences, for the above reasons, I determine that the sentencing court had no jurisdiction to impose them on the pleas of non vult so entered; that petitioner be discharged from his imprisonment thereon; that he be remanded to the custody of the Sheriff of Essex County, to be dealt with according to law; and that he be delivered forthwith by the Principal Keeper of the New Jersey State Prison to a representative of the said sheriff for such purpose. Since the writ of habeas corpus goes only to the alleged illegal imprisonment, and since obviously there is process outstanding, which calls upon this petitioner to answer to the law, he may not be discharged finally, but should be returned under recognized practice to the custody of the Sheriff of Essex County for prosecution in accordance with law. In re Graham, 10 N.J. Super. 422 (Law Div. 1950), reversed 13 N.J. Super. 449 (App. Div. 1951); Levine v. Hudspeth, Warden, &c., 127 F.2d 982 (C.C.A. 10, 1942); McCleary v. Hudspeth, Warden, &c., 124 F.2d 445 (C.C.A. 10, 1941); Ex Parte Cress, 123 P.2d 767 (Sup. Ct., Wash., 1942); 25 Am. Jur., Habeas Corpus, sec. 153.
Counsel for this petitioner was appointed as for an indigent person, pursuant to the implied authority of Rule 2:12-1, supra, and the appointment of such counsel will be continued for the purpose of making application on behalf of the petitioner to the appropriate court in Essex County for leave to vacate the pleas of non vult previously entered and upon such application being disposed of, such counsel is relieved of further assignment.
NOTES
[1] "* * * this boy is of defective intelligence, moron level * * *. He is immature and lacking in judgment and insight, * * *."
[2] Rule 2:12-1. Assignment of Counsel.

"(a) If the defendant appears in court, without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at the trial unless he elects to proceed without counsel or is able to obtain counsel. * * *" Amended November 10, 1949.
[3] R.S. 30:4-152. Sentences.

"The courts in sentencing to the reformatory shall not fix or limit the duration of sentence, but the time which any person shall serve in the reformatory shall not in any case exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, and the term of service may be terminated by the board of managers of the reformatory in accordance with its rules and regulations formally adopted."
[4] R.S. 30:4-151. Persons who may be committed.

"Any male between the ages of sixteen and twenty-six years, who has been convicted of a crime punishable by imprisonment in the state prison, who has not previously been sentenced to a state prison, reformatory or a penitentiary in this or any other state, may be committed to the reformatory at Annandale or to the reformatory at Rahway, but no person who has been previously convicted of a crime punishable by imprisonment in the state prison, and sentenced to a prison, reformatory or penitentiary may be sentenced to the reformatory at Annandale."