18 N.J. Super. 334 (1952)
87 A.2d 59
IN THE MATTER OF THE APPLICATIONS OF RICHARD SABONGY AND LOUIS TORZILLO FOR ISSUANCE OF WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided February 25, 1952.
*337 Messrs. Ivan C. Bash and Jack L. Cohen, attorneys for petitioners (Mr. Samuel Kagle, of the Pennsylvania bar, of counsel).
*338 Mr. Richard J. Congleton, Prosecutor of the Pleas of Essex County (Mr. C. William Caruso, Assistant Prosecutor, appearing), and Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey (Mr. Eugene T. Urbaniak, Deputy Attorney-General, appearing), attorneys for the State.
HUGHES, J.C.C.
Richard Sabongy and Louis Torzillo filed separate verified petitions under R.S. 2:82-1 et seq., N.J.S.A., alleging their wrongful imprisonment at the New Jersey State Prison and factually supporting, prima facie, their claims to the right to immediate release, and on the basis thereof writs of habeas corpus issued. Walker v. Johnston, 312 U.S. 275, 85 L.Ed. 830, 61 S.Ct. 574 (1941). Since the proceedings involved common questions of law and fact, they were consolidated. Rule 5:2-3. The return evidences that Sabongy has been in custody since March 21, 1941; that two commitments originating in the former Special Sessions Court of Bergen County certified the imposition therein of two concurrent sentences, each having a minimum of 12 and a maximum of 15 years; and that he is further held on a commitment of the former Special Sessions Court of Essex County, on a sentence imposed October 22, 1941, having a minimum of ten and a maximum of 15 years, this latter commitment, which is an amended one, certifying the direction by such Essex County Court that such sentence was to run consecutively to the Bergen County sentences. As to Torzillo, the return is the same with the single exception that his Bergen County sentences had a minimum term of ten years rather than 12 years, but this difference is immaterial to the issues involved now.
While the returns are not formally traversed, the proceedings attack the imprisonment as based on the Essex County sentences. The State stipulates that by virtue of the provisions of R.S. 30:4-140, N.J.S.A., and L. 1950, c. 315, establishing commutation time for work assignments and good behavior, the maxima of the Bergen County sentences *339 have been fulfilled, and that the petitioners are held presently on such Essex County sentences.
The case for the release of petitioners is based on two principal grounds, the first being that the sentences imposed in Essex County were not specified in the verbal pronouncement thereof to run consecutive to the Bergen County sentences and, therefore, must be deemed to have been imposed to run concurrently therewith (Ex parte DeLuccia, 10 N.J. Super. 374 (Law Div. 1950); Ex parte Benton, 10 N.J. Super. 595 (Law Div. 1950)), with the result, taking into account the cited commutation statutes, that such sentences have been fulfilled. The other ground advanced is that petitioners were deprived of the assistance of counsel in their defense on the Essex County charges and in connection with their sentences thereon, and thus there were violated constitutional rights essential to the jurisdictional functioning of the sentencing court. Johnson v. Zerbst, 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019 (1938).
There has been previous litigation on these claims. In 1948, Sabongy challenged the validity of the Essex County sentence by rule to show cause before the original sentencing judge (who is now deceased), on the ground that his plea of non vult had been induced fraudulently by an assistant prosecutor of the pleas. He lost on this proceeding. In October, 1949, Torzillo applied on motion to vacate his sentence, on similar grounds, to another judge of the Essex County Court and after full hearing he lost on that motion. In 1950, Sabongy applied to another judge of that court, on motion to vacate his sentence as illegal. Rule 2:7-13. The basis of the latter motion, on which Sabongy had a full hearing, was the alleged correction of the sentencing judge of the sentence originally imposed, some days after the date of such imposition, out of the presence and without the knowledge of this defendant.
It was contended that this correction of the sentence was to add the specification that it should run consecutive to the Bergen sentences and that since it was made after the prisoner *340 had entered into execution thereof, and since such specification would make the sentence more onerous, that correction was in excess of the power of the court. The judge decided this motion against Sabongy on an adverse finding of fact.
In view of all this previous exhaustive litigation, the State and the petitioners have stipulated that the record before me shall consist of the considerable testimony taken thereon and all of the documentary exhibits. Under the circumstances and in the interest of justice to all litigants, I approved this stipulation.
Hence the questions before me for determination are:
1. In entering the pleas of non vult and on the sentences based thereon, were petitioners deprived of the right to the assistance of counsel to the extent that these proceedings were constitutionally abortive?
2. Were the sentences imposed on October 22, 1941 to run concurrent with the Bergen County sentences and have they, therefore, been fulfilled?
3. May the instant court reach factual determinations in conflict with those of the Essex County Court previously considering these questions within the principle of res judicata?
In examining the latter question, it must be noted that at common law the doctrine of res judicata did not apply to a decision on habeas corpus refusing to discharge a prisoner (Ex parte Partington, 13 M. & W. 679 (Ct. Exch. 1845); Ex parte Turner, 92 Vt. 210, 102 A. 943 (Sup. Ct. Vt. 1918); Salinger v. Loisel, 265 U.S. 224, 68 L.Ed. 989, 44 S.Ct. 519 (1924); Waley v. Johnston, 316 U.S. 101, 86 L.Ed. 1302, 62 S.Ct. 964 (1942); United States v. Coy, 57 F. Supp. 661, affirmed 156 F.2d 293 (C.C.A. 6 1946), cert. den. 328 U.S. 841, 90 L.Ed. 1615, 66 S.Ct. 1010), although such decision is not without weight on a later application. United States ex rel. Bergdoll v. Drum, 107 F.2d 897, 129 A.L.R. 1165 (C.C.A. 2 1939), cert. den. 310 U.S. 648, 84 L.Ed. 1414, 60 S.Ct. 1098; United States ex rel. Innes v. Hiatt, Warden, &c., 141 F.2d 664 (C.C.A. 3 1944), affirming 50 F. Supp. 756 (D. Ct., M.D., Pa. 1943); State ex rel. Eyer v. Warden, &c., 190 Md. 767, 59 A.2d 745 *341 (C.C.A. Md. 1948). And there is little doubt of the power of the court in the exercise of its discretion to protect this privileged writ of freedom from abusive use by the filing of successive and repetitious applications therefor by a pertinacious relator. In re Tremper, 126 N.J. Eq. 276 (Ch. 1939); United States ex rel. McCann v. Thompson, Warden, &c., 144 F.2d 604, 156 A.L.R. 240 (C.C.A. 2 1944); United States v. Watkins, 164 F.2d 137 (C.C.A. 2 1947).
Aside from these rules, and having in mind the grounds of the sporadic applications made by one or the other of these petitioners, the nature of the remedy sought thereby or available to them, the scope of the inquiry made, and the general fabric of such litigations, I do not see that a conclusive estoppel could result. For example, Sabongy, in his 1948 application to the sentencing judge, asked that court to find as a ground for relief from sentence that a fraud had been perpetrated on the court, as indicated by Judge Flannagan in his opinion filed June 21, 1948:
"The principal ground upon which the defendant seeks to have the effect of his said action set aside is that such action was obtained by what he claims to be in fact, or in effect, a fraud upon the Court or upon the defendant."
The enormity of this proposed determination is a far cry from his present contention that he lacked the representation of counsel because lulled into believing that he would receive a concurrent sentence and that this situation may well have arisen by mere inadvertence on the part of the prosecuting official.
As to one or more of the other applications referred to, while the instant court is required to determine issues of fact involved therein, there seems on the whole a general lack of that cohesion and exactitude in the nature of those proceedings, upon which should rest any theory of estoppel akin to res judicata. For example, in the 1950 motion by Sabongy he sought a determination that his sentence was illegal; now he asks the present court to determine what that sentence *342 was in fact and whether it has been served. In that respect, too, it is noticed that the maximum term of the Bergen County sentences of these prisoners expired, as to Torzillo, on September 17, 1950, and as to Sabongy, on May 8, 1951, and hence at the time of their mentioned applications, there was no relief by way of habeas corpus available to them, for the Bergen sentences would bar any claim, at that time, to immediate release. Hence they could not have litigated, at least in this form, the claims which they now present, which, of course, removes the stigma of laches referred to in the adverse opinion of Judge Flannagan in Sabongy's 1948 proceeding. See State v. Ballard, 15 N.J. Super. 417 (App. Div. 1951).
On the whole, therefore, I am convinced that the instant court is permitted and obliged to reach independent determinations of fact relevant to the issues presently raised.
As to the claim that they were deprived of the assistance of counsel in the constitutional sense, the record before me establishes and I determine the facts to be as follows:
Early in 1941, these petitioners were apprehended in Bergen County and prosecuted for certain robberies, which were apparently a part of a series, including an equivalent offense in Essex County and one or more similar offenses in Passaic County. They were interrogated and confessed these crimes, including the offense in Essex County, and according to the testimony of Assistant Prosecutor Fox (Tr. 75, Record Nov. 1949, J. Conlon), the whole series of offenses was considered by the sentencing judge in Bergen County. The sentences imposed on the petitioners in Bergen County, as stated, were concurrent with each other and amounted to a maximum of 15 years. Other sentences were imposed in Passaic County, which were directed to run concurrently with those imposed in Bergen County. They entered upon service of these Bergen sentences immediately in the New Jersey State Prison in March, 1941. In September of that year, they were taken to Essex County to be disposed of on the indictment outstanding there. Upon arrival they were *343 importuned by the assistant prosecutor, with some help from a prosecutor's detective, to dispose of their cases by pleas of non vult. I find the evidence before me quite conclusive that Mr. Fox felt entirely justified in recommending the imposition of sentences to run concurrently with the Bergen sentence, not only because of the size of such latter sentences, but having in mind the punitive provisions of R.S. 2:103-9, N.J.S.A., amended L. 1940, c. 219, repealed L. 1950, c. 315, which would have materially increased the normal punishment included in such sentences because of habitual offender status of petitioners; that Mr. Fox was further convinced that the whole series of offenses of petitioner had been considered by the judge in Bergen County, as stated, and that his sentences were intended to deal with the whole scope thereof. This state of mind and intent of the first assistant prosecutor in charge of these cases was communicated to the petitioners, with the promise that he would recommend concurrent sentences to the sentencing judge in Essex. It was communicated to an official source in the prosecutor's office in Bergen County, Lt. Guidetti, with the further message that under these circumstances it would be unnecessary for counsel to appear. It was unquestionably upon this basis that petitioners entered their pleas of non vult. They were reassured by Mr. Fox in the very courtroom that they would suffer no additional penalty to the time they were serving on the Bergen sentences.
It seems clearly implied in the opinion of Judge Flannagan, filed June 21, 1948, that no such recommendation ever reached him and there is little doubt in my mind that this was due to some inadvertence or the confusion due to the pressure of criminal business in such courts, on the part of the assistant prosecutor.
Now, under these circumstances, it must first be noted that such recommendation, of course, could have had no binding effect on such judge, for it is unquestioned that:
"It is the right and duty of the trial court to impose sentence. R.S. 2:192-1, as am. L. 1944, c, 10, § 1, N.J.S.A. The imposition *344 of the sentence is the formal declaration by the court to the accused of the legal consequences of guilt of the crime charged. Of course, neither the prosecutor nor any assistant to the prosecutor has any authority to make any agreement or promise as to sentence which will bind the court. The fact that a plea of guilty or a plea of non vult was entered in reliance upon an agreement or promise of a prosecutor or an assistant to the prosecutor as to the sentence that would be imposed, standing alone, cannot restrict the power of the court to impose sentence in accordance with law." State v. Miller, 16 N.J. Super. 251 (App. Div. 1951).
The importance of the unfulfilled promise to make this recommendation, however, lies not in the failure of performance, nor in the failure of the court to impose a concurrent sentence, but in the consequences in respect of the presence of counsel and the assistance thereof in connection with entering the pleas, and at the imposition of sentence. Mr. DeLuccia, counsel for Torzillo in the Bergen County cases, was certainly absent when these pleas were entered and sentences imposed only by reason of the well-founded expectation that concurrent sentences would be recommended and would probably be imposed upon these defendants. There was such an exact community of interest between Sabongy and Torzillo that the lack of counsel familiar with the existing situation is directly attributable to the same cause. The entry of a plea equivalent to that of guilt, of course, is as significant as a trial on the merits, and the assistance of counsel is equally necessary and as firmly guaranteed in the constitutional sense. Ex parte Carter, 14 N.J. Super. 591 (Law Div. 1951); State v. Ballard, supra.
Deprivation of counsel is equally significant whether accomplished by threat (Uveges v. Pennsylvania, 335 U.S. 437, 93 L.Ed. 127, 69 S.Ct. 184 (1948)), inadvertence (Ex parte Carter, supra), pressure of judicial business (People v. Gordon, 30 N.Y. Supp.2d 625, 262 App. Div. 534 (N.Y. Sup. Ct., App. Div. 1941)), mistake (Wilfong v. Johnston, Warden, &c., 156 F.2d 507 (C.C.A. 9 1946)), haste (Poindexter v. State, 183 Tenn. 193, 191 S.W.2d 445 (Sup. Ct. Tenn. 1946); United States v. Bergamo, 154 F.2d 31 (C.C.A. 3 1946)), conflict of interest (Noble v. Eicher, *345 79 U.S. App. D.C. 217, 143 F.2d 1001 (1944)), or trick (Curtis v. Humphrey, 84 F. Supp. 969 (D.C. Pa. 1949)).
I, therefore, determine that these petitioners were deprived of the assistance of counsel and that the court consequently had no jurisdiction to receive their pleas or to impose the sentences complained of. Johnson v. Zerbst, supra; Ex parte Carter, supra.
Without more, the effect of this determination would require an order returning petitioners to Essex County for prosecution, under the practice described in Ex parte Carter, supra. The writ of habeas corpus goes only to the alleged illegal imprisonment. Where there is process outstanding, i.e., the existing indictment in Essex County, petitioners ordinarily would not be discharged finally, but would be returned, under recognized practice, to the custody of the Sheriff of Essex County for prosecution in accordance with law. The deprivation of constitutional right affecting only the pleas and the sentences, the outstanding process calls upon the defendant to answer to the law. Ex parte Graham, 10 N.J. Super. 422 (Law Div. 1950), reversed on other grounds Ex parte Graham, 13 N.J. Super. 449 (App. Div. 1951); 25 Am. Jur., Habeas Corpus, sec. 153; Ex parte Carter, supra.
Petitioners insist, however, that they have served, respectively, the sentences imposed upon them in Essex County; that such sentences began to run immediately upon imposition and thus ran concurrently with their Bergen County sentences, and have thus been fully served. The State concedes that if the Essex County sentences did run concurrently and if those sentences thus began to run on the date of imposition, i.e., on October 22, 1941, the maximum terms thereof have been fulfilled, in the case of Torzillo on April 2, 1951, and in the case of Sabongy on December 11, 1951. The variance in expiration date resulted from some loss of commutation time credits due to disciplinary infractions, the details of which are not relevant now.
The disputed area of fact in this case assumes controlling relevance in this wise. If, as the State contends, the sentences imposed by Judge Flannagan on these defendants *346 respectively, on October 22, 1941, were for not less than ten nor more than 15 years in the prison, and if such judge then and there in the verbal pronouncement of sentence directed that the same should be served consecutively to the Bergen County sentences then being served, it is clear and admitted that such sentences and specification are valid, and that petitioners are properly detained thereon. The right of a common law court to impose such a consecutive sentence has never been doubted, at least in New Jersey. At the common law, a court exercising criminal jurisdiction was empowered inherently to punish distinct violations of the law with separate and cumulative penalties. 15 Am. Jur., Criminal Law, sec. 470; State v. Mahaney, 73 N.J.L. 53 (Sup. Ct. 1905); United States v. Daugherty, 269 U.S. 360, 70 L.Ed. 309, 46 S.Ct. 156 (1926).
On the other hand, the petitioners contend that on such date of sentence, October 22, 1941, the court imposed sentences of ten to 15 years in the New Jersey State Prison, without verbal comment of any kind as to the concurrent or consecutive nature thereof. If this was so, the sentences would run concurrently with the Bergen County sentences then being served. Ex parte DeLuccia, supra; Ex parte Benton, supra. Unless a judge specifies otherwise, a sentence begins to run on the date of its imposition. As demonstrated above, he has authority to so specify, at least to provide that such sentence shall begin to run at the expiration of a term presently being served, or to be served. The language of the sentence should be given its ordinary legal meaning, and should so be construed as to give effect, if possible, to the intention of the judge who imposed it. Where the language of the sentence is too ambiguous to be otherwise construed, it will be construed as providing that the sentence should run concurrently. Fredericks v. Snook, Warden, &c., 8 F.2d 966 (C.C.A. 5 1925). And where the judgment fails to so state, no presumption will be indulged in favor of the nature of the sentences as being cumulative rather than concurrent. Lockhart v. State, 29 Tex. App. 35, 13 S.W. 1012 (Ct. App. Tex. 1890); Davis v. Anderson, Warden, &c., *347 270 Fed. 767 (C.C.A. 8 1921). In case of conflict between the judgment and the mittimus, or commitment, the latter, being the mere act of the clerk, does not control the judgment; on the contrary, it is the judgment of the court which is the true source of the right of the keeper of the State Prison to detain the prisoner. Davis v. Anderson, supra; State v. Mahaney, supra; Boyd v. Archer, 42 F.2d 43 (C.C.A. 9 1930).
A rule of law dispensing with verbal certitude in the pronouncement of criminal sentences would be intolerable, for endless litigations would result from the elusive search outside the record for evidence of the intent of the sentencing judge in imposing sentence.
While rigid exactitude beyond the point of reasonableness or necessity is not required, there must be precision, formality and individuation in the pronouncement of sentences in criminal cases in order to accord with ordinary concepts of justice. It is well settled that a sentence must be certain, definite and consistent in all its terms and not ambiguous, and not be open to any serious misapprehensions by those who must execute it. 70 A.L.R. 1511 (n).
Indeed, the United States Supreme Court has admonished judges to use "meticulously precise language in all judgment entries," particularly in the case of imposing sentences for crimes. United States v. Daugherty, supra.
These rules project very sharply the factual question of the nature of the sentences imposed on October 22, 1941. In those times, stenographic transcripts were not made of the judge's remarks in imposing sentences and this practice was not confined to Essex County. In the modern practice it is believed that the importance of such a memorial is recognized by a stenographic recording of the same, and such would seem indispensable in conforming to the standards and certainty required in the imposition of sentences. State v. Cash, 15 N.J. Super. 377 (App. Div. 1951); Ex parte DeLuccia, supra; Ex parte Carter, supra.
In reconstructing the situation without the benefit of such stenographic transcript, it is first noticed that the deputy *348 clerk of the court, a Mr. Cohen, prepared the original commitments on these sentences, which he made up from the sentence list preserved in the clerk's office. These commitments accompanied the prisoner to the State Prison and were silent as to the consecutive nature of the sentences. By their terms, they allowed the prisoners a credit of the time spent by them in jail at Newark awaiting sentence. According to the testimony of Deputy Clerk Cohen, these jail credits would not ordinarily have been allowed if it had been recognized in the imposition of these sentences, upon which these commitments were based, that a previously imposed term of imprisonment was currently being served. This discrepancy, i.e., the allowance of jail time, brought forth a letter from the admissions and record clerk of the New Jersey State Prison, dated October 23, 1941, calling to the attention of the clerk of the Essex County Court of Special Sessions the variance with regard to jail time and inquiring whether the sentences were to be concurrent or consecutive. Thereafter, by letter dated October 27, 1941, the clerk, Mr. Crowthers (who is now deceased), transmitted amended commitments to the State Prison certifying that the sentences were to run consecutively to the Bergen County sentences. In the 1948 litigation, the assistant prosecutor representing the State asserted that this letter established that the question of whether the sentences were to be consecutive or concurrent was brought to the attention of Judge Flannagan by Mr. Crowthers a few days after the sentence was imposed, at which time the court expressly disclosed its intention and made specific correction that the sentences were to be consecutive and not concurrent. The State appears to have argued then that such discussion sufficiently illuminated the intent, in the judge's mind at least, on the day that the sentences were imposed.
The State Prison accepted the amended commitments, of course, and presently files them in support of its return justifying the continued detention of petitioners.
Examination of the procedure in the clerk's office from which this commitment originated, indicates a very careful *349 method of comparison of some five or six separate lists of sentences, which was no doubt necessary by reason of the lack of a stenographic transcript of the proceedings in court. The original worksheet list was prepared by a Mr. Cashill in his handwriting. Mr. Cashill was present in court and inscribed these sentences as being ten to 15 years and being consecutive to the Bergen County sentences. The "sentence list" is taken directly from this worksheet and that list, as stated, contained the handwriting of Mr. McKeown dealing with the prime sentences, with the apparently added handwriting of Mr. Crowthers, specifying their consecutive nature. Deputy Clerk Cohen testified that he very probably made up the original commitments from the sentence list and stressed that the commitment was carefully checked against the records. At the time, i.e., on the same day, or on the following morning at the latest, the attaches of the clerk's office made several lists, all of which were carefully compared. Several of these lists, including lists lodged with the jail, with the probation office, and prepared for other purposes, are silent as to the consecutive nature of the sentences. Mr. Cashill expressed no independent recollection as to the exact words spoken by the judge in court, but did not recall making any correction of his worksheet. The petitioners, whose credibility, of course, is affected by several prior convictions, swear that the sentences imposed upon them in open court on October 22, 1941, were not specified as consecutive to the Bergen sentences, and they declare that under the circumstances they would have protested vigorously in view of their understanding with the assistant prosecutor. They assert that they knew nothing of the consecutive nature of the sentences until some time after their entry into the New Jersey State Prison and that they complained to various persons, including Judge Flannagan, the prosecutor of the pleas and others.
After a very careful analysis of all of the welter of testimony concerning these sentences and the practices and procedures which dealt with their recording, I am convinced that Judge Flannagan did not specify in the verbal pronouncement *350 thereof that they were to run consecutive to the Bergen County sentences; that it was, however, his intention that they should so run and that such intention was crystallized in the form of amended commitments some days later upon receipt of the inquiry from the New Jersey State Prison.
Under this determination of fact, it seems obvious that the belated amendment of the sentences could have no effect. It is settled that a more onerous sentence may not be imposed on a judgment of conviction after the defendant has started to serve a legal sentence previously imposed. State v. Addy, 43 N.J.L. 113 (Sup. Ct. 1881); Caprio v. Home of Good Shepherd of Newark, 91 N.J.L. 14 (Sup. Ct. 1917); State v. White, 3 N.J. Misc. 1016 (Sup. Ct. 1925), affirmed 103 N.J.L. 153 (E. & A. 1926).
Thus, considering the amended commitments as having been responsive to a direction by the sentencing judge to a clerk on or about October 27, 1941, they could not serve to increase the sentences originally imposed, for undoubtedly a specification that the sentences should run consecutive to a previous sentence would make them more onerous and, in any case, an otherwise valid sentence for corporal punishment would be invalid if imposed out of the presence of the defendant.
Accordingly, I determine as a matter of fact that the sentences imposed upon these defendants, respectively, on October 22, 1941, in the former Special Sessions Court of Essex County, lacked any specification whatever as to the consecutive or concurrent nature thereof in relation to the Bergen County sentences then being suffered and in legal effect, must be considered to have run concurrently therewith.
Accordingly, I determine that the sentences imposed, respectively, upon petitioners were to run concurrently with the Bergen County sentences being served by them, that all have been served, and that the petitioners are improperly detained by the Warden of the New Jersey State Prison.
Let the petitioners be discharged.