58 N.J. Super. 80 (1959)
155 A.2d 571
IN THE MATTER OF THE APPLICATION OF ANTHONY PALUMBO, NEW JERSEY STATE PRISON, FOR ISSUANCE OF A WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1959.
Decided November 6, 1959.
*82 Before Judges CONFORD, FOLEY and SCHERER.
*83 Mr. Abraham Miller (assigned counsel) argued the cause for defendant-appellant.
Mr. Edward F. Hamill, Assistant Prosecutor of Hudson County, argued the cause for plaintiff-respondent (Mr. Lawrence A. Whipple, Hudson County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal from a dismissal by the Hudson County Court of an application for a writ of habeas corpus after a hearing on the merits. Since the applicant was afforded a full hearing, with the aid of assigned counsel (not the assigned counsel on this appeal), and the matter was disposed of purportedly on the merits, we treat the case as though a writ had issued and been discharged after hearing.
Although there is other general verbiage in the application, the essential grievances asserted therein are: (a) Palumbo did not "have the assistance of effective counsel to represent him" in connection with pleas of guilty to two indictments charging him with armed robbery and to an accusation charging him with being an habitual criminal contrary to N.J.S. 2A:85-12; (b) subsequent to his pleas of guilty on the indictments a request by letter that he be permitted to retract the plea was ignored and a renewal of that request before sentence was denied; (c) the change of plea was the result of false promises and representations by the assistant prosecutor concerning sentences to be imposed.
Upon the institution of this appeal and the filing by applicant of a petition as an indigent, the court assigned counsel to the applicant (other than assigned counsel on the application below and present appellate counsel). That counsel conferred with Palumbo, investigated the case, took certain steps in the trial court hereinafter referred to, and then petitioned this court to be relieved of the assignment on the ground that he found no merit in the appeal. What follows in this opinion indicates that Palumbo had at least fairly debatable grounds on which to prosecute his appeal, *84 and furnishes a demonstration-lesson that assigned counsel ought to execute an assignment with the utmost fidelity and with all the resourcefulness, imagination and application that compensated counsel would exert on behalf of a client regardless of his private opinion concerning the merits of the appeal. Once the court orders an assignment, that should, except in most extraordinary circumstances, constitute a mandate to assigned counsel to proceed and make for the appellant the best case he can, keeping in mind that, in the ultimate, the determination of the merits of the appeal is for the court after full consideration, not for counsel on either side. Any other attitude by assigned counsel to his responsibility seriously impairs the utility of the assignment process as a medium for assurance of equal justice to both indigent and moneyed defendants in criminal cases. Cf. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Many successes have been scored as a result of fine work by assigned counsel in cases that may have seemed at first blush to have no merit.
The original assigned counsel was relieved of his assignment by this court, his petition therefor having impaired his further usefulness in the case. The court denied applicant's petition for substituted assigned counsel, not having before it the full transcripts of the proceedings in the trial court. After affirmance of that determination by the Supreme Court, Palumbo filed a brief and appendix pro se. Examination of the contents thereof in preparation for argument led this court on its own motion to assign the counsel who argued the cause and filed a supplemental brief. In determining this matter consideration has been given to both the papers filed by appellant pro se and those submitted by assigned counsel.
The facts material to a resolution of this appeal are as follows.
During the 1954 term the Hudson County grand jury returned three indictments against Palumbo and one Wines, each charging them jointly with the commission of a separate *85 offense of armed robbery. Their original plea to all three was not guilty. The first indictment was tried in November 1955 and both defendants were convicted. At that trial Palumbo was represented by Thomas J. Armstrong, Esq., and Wines by John J. Flaherty, Esq., both experienced trial lawyers, and assigned by the court to said defendants. (This conviction was subsequently reversed for an error in the charge, State v. Wines, 47 N.J. Super. 235 (App. Div. 1957); the defendants were reconvicted on a retrial.)
Mr. Armstrong was never assigned as counsel to Palumbo or retained by him in connection with the other two armed robbery indictments. However, as he testified in the present proceedings, after the trial aforementioned he received a letter from the Hudson County Prosecutor asking that he "appear on behalf of Mr. Palumbo" in connection with the remaining indictments. He informed the assistant prosecutor, Mr. Dworkin, that he had not been assigned in those cases. Nevertheless, feeling that "as an officer of the court" it was his duty to visit the prisoner, he did so and "interviewed Mr. Palumbo." He told him he was not assigned in the other cases, and Palumbo "admitted that that was so." They "conferred together" and Armstrong left. He testified: "I don't feel as an attorney I should disclose our conversation at that time." He later received another letter from the prosecutor that the cases were to be tried. He again visited Palumbo at the jail, told him he was not his attorney and that he "thought that he should get one." His next association with the case, he said, was his appearance before the county judge (a different judge from the one who heard the present application) who accepted guilty pleas from Palumbo and Wines on January 11, 1956.
There is no clear picture from the evidence as to how it was arranged that Palumbo and Wines were to change their pleas in court on January 11, 1956, it being apparent that the date was fixed, in the first instance, for the trial of the indictments. In both briefs Palumbo charges that he was induced to change his plea by promises or representations *86 by the assistant prosecutor. We will consider the evidential support for that contention later herein. In any event, as to the matter of legal representation, the transcript of the January 11, 1956 court session shows that the judge announced at the very outset that: "The record will note that Mr. Thomas Armstrong appears for the defendant Palumbo and Mr. * * * John J. Flaherty, Jr. is appearing for Wines." Mr. Armstrong then made reference to the fact that he had notified another lawyer, Michael Breitkopf, Esq., who he said "had appeared in this case heretofore," of the scheduling of the session that morning. No other explanation of the significance of Mr. Breitkopf's connection with the case appears in the record. Thereupon Mr. Flaherty made the following statement in reference to the defendant Wines:
"MR. FLAHERTY: There are a number of indictments against Mr. Wines and I appeared in one of the cases with Mr. Armstrong, a three day trial. I had not been appointed to represent him in the present proceedings. I had been notified this morning that he was coming in to plead to two indictments and I am merely here this morning for the pleadings.
I have not advised Mr. Wines to plead or not to plead. Mr. Wines had asked me whether or not there would be concurrent sentences. I told him I had no authority to say whether there would or would not. There are no arrangements made whatsoever with the prosecutor or the court as to what the sentence may be if he takes this plea. I am not advising him to plead one way or the other and this procedure now is on his own behalf, and his own words would be the decision he makes."
Thereupon Wines' plea was changed from not guilty to guilty. This was followed by Mr. Armstrong's statement that: "In the same manner Mr. Flaherty's remarks with respect to representation of Mr. Wines are adopted by me as if I had reiterated them." This was obviously intended as in reference to Mr. Armstrong's relationship with Palumbo. The transcript then shows this:
"THE COURT: How old are you, Mr. Palumbo?
DEFENDANT PALUMBO: Forty-five.
THE COURT: Do you know the implication of withdrawing the plea of not guilty and pleading guilty?
*87 DEFENDANT PALUMBO: Yes, sir.
THE COURT: All right, the plea will be accepted.
MR. DWORKIN: Now, do I understand that the Court has permitted the defendant to withdraw the plea of not guilty heretofore entered to this indictment and has permitted him to enter a plea of guilty? Is that correct?
THE COURT: In both cases.
MR. ARMSTRONG: Would the Court permit a remark by me at this phase of the proceedings and to make inquiry of the defendant to determine if that plea is made by him freely and without any coercion or suggestion by me or promise by me appearing as I do in this capacity.
THE COURT: Well, the Court will ask both defendants. This change of plea is not made through any threat, fear or any promises of any kind, is that so, sir?
DEFENDANT PALUMBO: Yes, sir."
Palumbo then repeated his signification of change of plea in terms of the specific charges in the indictments and reference was made by the clerk to the scheduling of sentencing on the pleas before another judge (the one who heard the habeas corpus application) two days later, the 13th of the month.
Sentencing actually did not take place until June 19, 1956. But the day after the pleas of guilty were accepted Palumbo, according to his testimony on the present application, wrote to the judge scheduled to sentence him seeking leave to retract the pleas of guilty, but received no response to the request. In any case, the motion to retract the plea was renewed before that judge on sentencing day and there is no claim by defendant that he did not give consideration to the request at that time, as contemplated by R.R. 3:7-10(a). After denial of the motion, the court imposed consecutive sentences with respect to the two armed robbery indictments of from 10 to 15 years and from 7 to 10 years, along with a concurrent sentence of from 20 to 30 years on an habitual offender accusation presented by the prosecutor pursuant to N.J.S. 2A:85-13 several months earlier, to which Palumbo, with the assistance of an assigned counsel, had pleaded guilty.
*88 The present application for habeas corpus was filed in January 1958 and the application denied after hearing. The basis for the determination is discussed later herein.
After the filing of the present appeal in forma pauperis the first appellate counsel assigned to Palumbo moved the sentencing judge in December 1958 to permit withdrawal of the guilty pleas to the indictments and to the habitual offender accusation, pursuant to R.R. 3:7-10(a), which permits such an application after sentencing "to correct manifest injustice." The motion was granted as to the latter, sentence was vacated and defendant allowed to enter a plea of not guilty. The accusation is no longer pending. The motion was denied as to the pleas to the indictments.

I.
It was necessary that defendant, as an indigent, be provided with counsel for the purpose of advice on deciding how to plead to the indictments. Jenkins v. State, 57 N.J. Super. 93, 108 (App. Div. 1959); State v. Griffith, 14 N.J. Super. 77, 84-85 (App. Div. 1951); State v. Ballard, 15 N.J. Super. 417, 421 (App. Div. 1951); In re Sabogny, 18 N.J. Super. 334, 344 (Cty. Ct. 1952); In re Carter, 14 N.J. Super. 591, 601 (Cty. Ct. 1951).
We are in accord with Palumbo's contention that he was not represented by counsel at the January 11, 1956 proceedings when he changed his plea to guilty on the two indictments. The notation by the court on the record at the very outset of the proceedings at that time of the appearances of Messrs. Armstrong and Flaherty as counsel does not establish the fact of representation, and the contrary is demonstrated by the expressions of those gentlemen at the time, quoted above, and by Mr. Armstrong's testimony at the hearing on the instant application. The latter made it plain he was not present at the hearing as Palumbo's counsel in connection with that day's business, and it does not appear that he undertook to give him any advice with *89 respect to the matter of pleading on the indictments here in question, either at or prior to the session when the change of plea was effected. Indeed he stressed that he kept urging Palumbo to get himself counsel since he, Armstrong, was not assigned on these indictments.

II.
The question which next presents itself is whether the right to counsel was waived. The importance of the right to counsel in all phases of a criminal prosecution requires that an asserted waiver be shown to have been both intelligent and clearly manifest. There is a presumption of non-waiver. State v. Griffith, supra (14 N.J. Super. at pp. 83-84); Jenkins v. State, supra (57 N.J. Super. at page 125); Zasada v. State, 19 N.J. Super. 589, 594 (App. Div. 1952). See also Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937); Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941). In order to find an effective waiver we must be satisfied from the circumstances that (1) defendant knew he had a right to counsel; (2) he failed to avail himself of that right with full understanding of the implications and consequences of a plea of guilty; and (3) he nevertheless submitted the plea entirely voluntarily. See Ex parte Sabogny, supra (18 N.J. Super. at page 344); Von Moltke v. Gillies, 332 U.S. 708, 729, 68 S.Ct. 316, 92 L.Ed. 309 (1947) (Frankfurter, J., concurring).
In our opinion it is clear that Palumbo knew both of his right to counsel and of the full import of a plea of guilty. Palumbo has frequently appeared before the criminal courts of this State. His record recites 18 prior convictions. He pleaded either non vult or guilty to all of those charges. Three of these pleas were made after the predecessor of R.R. 1:12-9(a) (Rule 2:12-1), requiring notification to the defendant of his right to counsel, went into effect. In the absence of any claim to the contrary whatsoever in any of the prior proceedings in this case or in the briefs submitted *90 on behalf of Palumbo on this appeal, we cannot infer that defendant was not previously informed of his right to counsel or that he did not know of it notwithstanding the court's failure in the particular instance here in issue to comply with the rule (undoubtedly because of an assumption that Armstrong was present as counsel). See State v. Gladstone, 17 N.J. Super. 467, 471-472 (App. Div. 1952); cf. Janiec v. McCorkle, 52 N.J. Super. 1, 10-11 (App. Div. 1958). Nor, for the same reasons, can we find that he was unaware of the full import of his plea. See State v. Forsythe, 42 N.J. Super. 275 (App. Div. 1956). Furthermore, defendant was specifically interrogated on his understanding thereof before the pleas were accepted, and in view of his previous background we see no reason to doubt the verity of his affirmative answer.
We feel impelled to say, in passing, that the fact that a defendant is "court-wise" does not necessarily compel the conclusion that his conviction is unassailable on grounds of lack of representation. Such a conclusion, while proper under the circumstances of some cases, see State v. Worbetz, 17 N.J. 569, 571 (1955); Worbetz v. Goodman, 47 N.J. Super. 391 (App. Div. 1957), certification denied 26 N.J. 245 (1958); State v. Forsythe, supra; State v. Gladstone, supra; State v. LaSalle, 19 N.J. Super. 510 (App. Div. 1952), cannot be automatically indulged in every case. So to do would be to deny the same full procedural protection to previously convicted criminals which we afford to defendants in their first involvement with the law. See State v. Terry, 30 N.J. Super. 288 (App. Div. 1954). In the present case, however, as noted, were there no question as to the effect of alleged inducements and promises by the prosecutor, we would find that Palumbo's age (45) and background justify a finding of knowledge of the right to counsel and the significance of the plea, and affirm the judgment forthwith on the basis of waiver.
Yet waiver cannot be predicated solely on the failure to request counsel by one having an understanding of the *91 import of the plea. The plea must also be made voluntarily, and such is not the case when it is induced by the prosecution either through promises, express or implied, concerning sentencing after plea, or coercive representations as to the probable consequences of a refusal to plead. Ex parte Sabogny, supra; Walker v. Johnston, supra.
Palumbo in his testimony below claimed promises and threats by the assistant prosecutor. The relevant facts were not articulated very clearly, but this may have been due in some degree to the fact that he was permitted by his assigned counsel and the court to testify in narrative form, a procedure not well calculated to effectively elicit from a lay witness the facts material to a claim of illegal detention. Palumbo said the assistant prosecutor told him on the day of the plea: "Don't forget, they can charge you with the Habitual Act," and that "he didn't think I would get any consecutive sentences." He continued that "* * * after that I pleaded to them two charges." Later he testified: "I was under the intention (sic) that it was going to be a concurrent sentence and nothing was done about the habitual (sic)." When asked by the court, "Where did you get that impression?" he responded, "Mr. Dworkin."
Mr. Dworkin testified that on the morning of the date when the indictments were scheduled for trial he "was informed that Mr. Palumbo was going to plead guilty to those indictments," but not stating by whom he was so informed. He said that "at no time did I tell him or his counsel, or anybody in his behalf, what the nature of the sentence was going to be," nor "that he would get a concurrent sentence or what kind of sentence." There was some uncertainty on his cross-examination as to whether he had any private conversation with Palumbo on the date of the plea but he was firm that "there was no conversations about the kind of sentence he was going to get."
In deciding the application at the end of the hearing the judge said:
*92 "* * * He attacks his pleas of guilty; he attacks my action in denying him an opportunity to change his pleas of guilty, says he was not effectively represented. He was denied due process of law in that the Court was without power or jurisdiction to sentence.
On all those points I find the defendant has failed to show any proper grounds for me to change my decision. So far as they are concerned the writ of habeas corpus is denied. * * *"
Unfortunately, the foregoing does not contain a clear reference to or finding on the sharply disputed issue of fact raised by Palumbo relative to the alleged promises and threats by the assistant prosecutor. It is entirely possible that the court's decision may have been predicated on a finding that Palumbo was represented by counsel on the taking of the plea, thereby minimizing the significance of the issue of promises and threats. While a decision adverse to the applicant on the latter issue may also have been intended by the court, we do not consider it to be sufficiently clearly implied to warrant our inferring it in the light of the importance of that specific issue to the determination of the voluntariness of the waiver of counsel. We deem it preferable that a finding on that issue be made express on the record of the proceedings rather than a matter of inference. We consequently order the matter remanded to the trial court so that the judge who heard the application may make a specific factual finding on the issue referred to, and, of course, enter such accordant judgment as may be appropriate in the light of this opinion. Counsel assigned to Palumbo on this appeal is directed to continue as such through the proceedings on the remand.
Remanded for further proceedings in accordance with this opinion.