**UNITED STATES of America ex rel. Harry CRAIG**

v.

**David N. MYERS, Superintendent, State Correctional Institution, Graterford, Pennsylvania, Appellant.**

No. 14646.

United States Court of Appeals Third Circuit.

Submitted Feb. 18, 1964.

Decided April 2, 1964.

John R. Graham, Asst. Dist. Atty. for Delaware County, Media, Pa., for appellant.

Harry Craig, Philadelphia, Pa., for appellee.

Before KALODNER and HASTIE, Circuit Judges, and KIRKPATRICK, District Judge.

HASTIE, Circuit Judge.

This is a federal habeas corpus proceeding in which Harry Craig, a Pennsylvania state prisoner, has claimed that his conviction and sentence for robbery should be invalidated as violative of due process of law because the state refused to provide him with the assistance of counsel. After hearing, the district court granted the writ and ordered Craig's release from custody. The state has appealed.

The allegedly unconstitutional criminal procedure occurred in 1931. At that time Craig was arraigned upon an indictment charging in different counts two separate robberies. It is now admitted and the court below found that Craig, an indigent person, appeared at arraignment without counsel and requested the court to obtain and appoint counsel for him. This the court refused to do. Craig then pleaded guilty and was sentenced to 10 to 20 years in prison on each count, the sentences to run consecutively.

As a result of bad conduct in prison, Craig's incarceration continued until 1955, when he was released on parole. A parole violation resulted in his recommitment in 1960 under the 1931 sentence, after he had served an intervening sentence for another unrelated crime. Thereafter, he sought habeas corpus in the courts of Pennsylvania, charging unconstitutional denial of counsel in 1931, but was denied relief. Commonwealth ex rel. Craig v. Banmiller, 1963, 410 Pa. 584, 189 A.2d 875, aff'g 199 Pa.Super. 478, 186 A.2d 407. This federal proceeding followed.

In granting habeas corpus the district court relied upon the recent decision of the Supreme Court in Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. Gideon, like Craig, had been convicted of robbery after he had requested and had been denied the appointment of counsel. The cases differ only in that Gideon made an unsuccessful attempt to defend himself without counsel while Craig pleaded guilty after his

unsuccessful request for legal assistance. But that difference is not constitutionally significant. If the circumstances are such that the accused has a constitutional right to have counsel appointed to assist him, his subsequent guilty plea, entered without advice of counsel does not mitigate the denial of counsel or make it constitutionally tolerable. Moore v. Michigan, 1957, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167.[1]

The principal argument of the state on this appeal, and the argument which persuaded the Supreme Court of Pennsylvania to deny Craig relief, is that the doctrine of Gideon v. Wainwright should not be applied "retroactively". See this court's discussion of the general problem in different context in United States ex rel. Campbell v. Rundle, 3 Cir. 1964, 327 F.2d 153.

We preface our examination of that contention with a summary review of the course of the Supreme Court adjudication on the constitutional right to counsel. When Craig was convicted in 1931, the Supreme Court had not ruled upon any claim that due process of law required the appointment of counsel to assist an indigent person charged with crime. The first ruling on such a claim occurred in 1932 in the first Scottsboro case, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. There the Court held that, in the situation of indigent illiterate youths, charged with a capital felony in a strange hostile community, "the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment". 287 U.S. at 71, 53 S.Ct. at 65, 77 L.Ed. 158. The Court explicitly left open, "[w]hether this would be so in other criminal prosecutions, or under other circumstances * * *." Id.

By 1940, the Court seemingly had come to view any denial of representation in a capital case as a clear violation of the Fourteenth Amendment, regardless of circumstances showing special need for such assistance. See Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. To the same effect, see Bute v. Illinois, 1948, 333 U.S. 640, 674, 68 S.Ct. 763, 92 L.Ed. 986. And in 1961 it was squarely held that, regardless of any proof of prejudice in fact, it is a denial of due process even to arraign an indigent accused on a capital charge without first providing counsel for him. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114.

Since Powell v. Alabama, doctrine concerning the constitutional extent of the right of the accused to counsel in non-capital cases has developed in another line of decisions. Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, involving a robbery conviction, relied upon Powell v. Alabama as a precedent for an analysis in which all circumstances of the case at hand were considered relevant to a decision whether the denial of counsel was fundamentally unfair. The court reasoned that the nature of the contested issues, the competency of the accused and the manner in which the trial court conducted the non-jury trial combined to justify a conclusion that denial of counsel had not been fundamentally unfair. Within a few years, Betts v. Brady and similar cases came to be accepted as embodying a rule that the denial of counsel by a state in a non-capital case is a denial of due process only where there are "special circumstances" showing that the accused was prejudiced thereby. See, e.g., Bute v. Illinois, supra. But in more recent years, as Mr. Justice Harlan pointed out in his concurring opinion in Gideon v. Wainwright, the requirement that there be "special circumstances" showing prej-

---

1. Even in such a case as Bute v. Illinois, 1948, 333 U.S. 640, 68 S.Ct. 763, 92 L. Ed. 986, where a bare majority of the Court sustained a denial of counsel in a non-capital case, there is no suggestion that the defendant's guilty plea was a controlling factor.

udice had become so eroded as to be practically meaningless, with the Court coming to the position that "the mere existence of a serious criminal charge constituted in itself special circumstances requiring the services of counsel at trial". 372 U.S. at 351, 83 S.Ct. at 800, 9 L.Ed.2d 799. Thus, the decision in Gideon v. Wainwright was foreshadowed by and predictable from cases which preceded it. *E.g.*, Chewning v. Cunningham, 1962, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442; Hudson v. North Carolina, 1960, 363 U.S. 697, 80 S.Ct. 1314, 4 L.Ed.2d 1500.

The present significance and utility of Gideon v. Wainwright will appear more clearly if we begin not with the illusory[2] question of the "retroactivity" of that decision, but with an examination and analysis of the judicial process as involved in this case. Following a thirty-year evolution of legal doctrine concerning the constitutional right to counsel, Craig filed the present petition for habeas corpus. He was still deprived of liberty under the 1931 sentence. The district court unquestionably had jurisdiction to act upon the merits of his claim that he was entitled to release because his conviction had been achieved by unconstitutional procedure. Indeed, it became the duty of the court, after judging the facts and the law, to decide whether Craig had been denied due process and, if so, to order his release. The real question was and is what canons of judgment should be employed in making this decision.

In these circumstances, the present contention that Gideon v. Wainwright is not "retroactive" is a rather backhanded and unhelpful way of arguing that, in judging whether the refusal to provide counsel for Craig violated the due process clause, the district court and this court, and presumably the Supreme Court as well, should ignore the existence of the Gideon case and the constitutional doctrine for which it stands because the challenged conviction antedated that decision. Why we should not, by parity of reasoning, also ignore Betts v. Brady, Powell v. Alabama, and the entire body of case law on the constitutional consequences of the denial of counsel which has developed in the thirty years since Craig's conviction, we are not told. However, the logical implication of the present contention that all of this legal history is irrelevant, discloses the involvement of a startling departure from the normal course of judicature.

In actuality, all criminal convictions, all appellate judgments reversing convictions and, most notably, all judgments sustaining collateral attacks on convictions impose legal consequences upon the basis of the court's present legal evaluation of past conduct. It is irrelevant that the judge's views of what constitutes a denial of due process may have changed since the occurrence of the events in suit, or that he or some other judge might have rendered a different decision had the same matter reached his court years earlier. The petitioner is entitled to the most competent and informed decision the judge can now make whether there was fundamental unfairness in his past conviction. Our system is not so unenlightened as to require that in attaching *present* consequences to 1931 occurrences, a judge must ignore all of the insight that men learned in the law and observant of human behavior have acquired concerning the essentials of tolerable criminal procedure during the past 30 years.

Gideon v. Wainwright itself exemplifies this process. Reviewing the thirty-year evolution of relevant doctrine, the Court expressed its present judgment on the right of indigents charged with serious crime to counsel and applied that present judgment to the procedure

---

2. For a discerning commentary upon the illusory character of the conception of "retroactivity" as applied to decisions like Gideon, see Torcia and King, The Mirage of Retroactivity and Changing Constitutional Concepts, 1962, 66 Dick.L. Rev. 269.

by which the prisoner Gideon had been convicted some years earlier. The same process is appropriate now in Craig's case, whether in the district court, this court of appeals, or the Supreme Court. Our situation is different only in that we now have the benefit, not only of doctrinal evolution before Gideon, but also of the analysis and conclusion in Gideon itself. If the reasoning in Gideon is persuasive to us we will wish to adopt it here.

■ Moreover, as an inferior court we must accept the Gideon decision as an authoritative ruling on the proper interpretation of the Fourteenth Amendment. If Gideon v. Wainwright is given effect as a prediction of the position the Supreme Court would take in the present case, there is no basis, other than Craig's guilty plea, for predicting an analysis and conclusion here any different from Gideon. And we already have stated our view that the guilty plea is not a decisive factor.

■ Thus, both the persuasiveness of Gideon v. Wainwright as a considered opinion, informed by 30 years of judicial experience with a serious problem, and its authoritative indication of the way the highest court would decide our case, impel us to a decision that Craig's conviction resulted from fundamentally unfair procedure violative of due process.

In this process we are concerned whether Gideon is "right" and currently authoritative, not whether it is "retroactive". We are impressed that it achieves a just result by sound reasoning equally applicable to our case and that the Supreme Court would undoubtedly apply the same reasoning here. Cf. Eskridge v. Washington, 1958, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269, following Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Fahy v. Connecticut, 1963, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, following Mapp. v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. That is basis enough for a decision in this case invalidating Craig's conviction. Indeed,

a contrary decision would be irresponsible, for it would repudiate both our own best judgment of fundamental fairness in this case and the Supreme Court's view of a similar case.

■ Finally, the district court ordered Craig's release from confinement without mention of the state's right to arraign him again on the 1931 indictment, after providing him with counsel. Whether the state could prove the 1931 charge in a 1964 trial we do not know. Whether the competent officers of the state would be so Draconian in their administration of justice as to make the attempt, we do not know. In any event, the 1931 indictment has not been invalidated. The granting of the federal writ of habeas corpus in the present circumstances does not preclude a new arraignment and trial, or the taking of proper steps to hold the defendant in custody or under bail pending trial. This may have been implicit in the judgment below. We now make it explicit.

The judgment, thus construed, will be affirmed.