Anthony PALUMBO, Appellant,

v.

STATE OF NEW JERSEY, Howard Yeager, Warden, New Jersey State Prison.

No. 14572.

United States Court of Appeals Third Circuit.

Submitted Jan. 21, 1964.

Decided June 30, 1964.

District Court for the District of New Jersey denying his two petitions for writs of habeas corpus.[1]

On January 22, 1962, Palumbo filed a petition for habeas corpus in the District Court. It alleged that his conviction, on retrial, of May 29, 1959, in the Hudson County Court of New Jersey for armed robbery and the use of firearms under indictment 631 violated his constitutional protection against double jeopardy.[2]

On January 28, 1963, Palumbo filed a second petition in the District Court. It alleged that his plea of guilty on January 11, 1956 in the Hudson County Court for armed robbery under indictments 632 and 720 violated his constitutional protection of fundamental justice under the fourteenth amendment. He specifically contended, moreover, that the Hudson County Court failed to provide him with the assistance of counsel.

Palumbo is presently imprisoned under the sentence he received for his guilty plea to indictments 632 and 720.[3] His sentence for conviction under 631 will begin at the completion of his present incarceration.[4]

■ The District Court has the power to consider the merits of a habeas corpus petition that challenges present

---

Anthony Palumbo, pro se, appellant.

James A. Tumulty, Jr., Prosecutor; William A. O'Brien, Asst. Prosecutor, Jersey City, N. J., for appellee.

Before BIGGS, Chief Judge, and FORMAN and GANEY, Circuit Judges.

FORMAN, Circuit Judge.

This is an appeal by Anthony Palumbo from a single order by the United States

---

1. Unreported memorandum and order filed on June 17, 1963. Palumbo v. State of New Jersey (Civil 49–62).

2. After a trial in the Hudson County Court wherein a court-appointed counsel represented Palumbo, on November 4, 1955, a jury found Palumbo guilty on indictment 631, rev'd on reasons unrelated to the present petition, State v. Wines, 47 N.J. Super. 235, 135 A.2d 543 (App.Div.1957); on retrial Palumbo was found guilty by a jury, May 29, 1959, aff'd, State v. Wines, 65 N.J.Super. 262, 167 A.2d 650 (App. Div.), cert. denied, State v. Wines, 34 N.J. 474, 170 A.2d 86, cert. denied, Palumbo v. New Jersey, 368 U.S. 905, 82 S.Ct. 184, 7 L.Ed.2d 99 (1961).

3. On June 15, 1956, Palumbo was sentenced by the Hudson County Court to serve 10 years minimum and 15 years maximum on his guilty plea to indictment

632, and seven years minimum and ten years maximum on his guilty plea to indictment 720.

The District Court erroneously stated in its memorandum, *supra* note 1, that Palumbo was sentenced for indictments 632 and 720, on June 19, 1959.

4. On July 2, 1959, Palumbo was sentenced by Hudson County Court for his conviction on indictment 631 to serve consecutive terms of 10 years minimum and 15 years maximum, and 3 years minimum and 5 years maximum. It was specified that these sentences should be served after the sentences imposed for convictions on indictments 632 and 720. Confusion as to the timing of this sentence is dispelled when it is realized that indictment 631 was retried only on May 29, 1959. See note 2 *supra*. Pending these proceedings he had been serving his sentence on indictments 632 and 720.

custody.[5] But it does not have the power to consider the merits of a habeas corpus petition attacking conviction on which the service of sentence has yet to commence.[6]

Accordingly, the District Court incorrectly entertained consideration of the merits of Palumbo's habeas corpus petition challenging the validity of his conviction under indictment 631. We, nevertheless, affirm the dismissal of this petition, but solely on the ground that the District Court was without requisite jurisdiction to consider the matter. Palumbo, in fact, has based his appeal exclusively on disagreement with the refusal of the court to grant his petition for the writ on sentences received on indictments 632 and 720.[7]

Thus, before us for determination is the sole question whether the decision of the District Court—that Palumbo waived his right to counsel when he pleaded guilty to indictments 632 and 720—is in error.[8]

The pertinent facts and circumstances concerning his convictions on these two indictments are: On June 17, 1955, Palumbo and co-defendant Harry Wines pleaded not guilty to indictments 631 and 632, and on October 7, 1955, they pleaded not guilty to robbery indictment 720.

The Hudson County Court appointed Thomas J. Armstrong, Esquire, to represent Palumbo and John J. Flaherty, Jr., Esquire, to represent Wines 'on indictment 631. On November 24, 1955, a jury found them guilty of that charge.[9]

Following Palumbo's defense on indictment 631, his attorney in that case, Mr. Armstrong, received a letter from the Hudson County Prosecutor asking him to defend Palumbo on armed robbery indictments 632 and 720. He went to the office of the Prosecutor in Hudson County and advised one of the assistant prosecutors that there had been no assignment of these cases to him by the court.

Mr. Armstrong, notwithstanding his lack of assignment, felt that it was his duty to visit and interview Palumbo at the Hudson County Jail. Yet, while conversing with the imprisoned Palumbo, he told him that he had not been assigned to defend him on indictments 632 and 720.

Subsequently, Mr. Armstrong received another communication from the Prosecutor, advising him that the two cases concerning Palumbo would soon be up for trial. He again visited the jail and there suggested to Palumbo that since he was not his attorney, Palumbo should obtain one.

Mr. Armstrong, nevertheless, appeared in court with Palumbo on January 11, 1956. In addition, Mr. Flaherty accompanied Wines. At the commencement of the proceedings, the court observed:

"The record will note that Mr. Thomas Armstrong appears for the defendant Palumbo and Mr. Jack Flaherty or John J. Flaherty is appearing for Wines."

Mr. Armstrong requested that the record show that Michael Breitkopf, Esquire, had appeared in the case, although he understood Mr. Breitkopf had filed no formal appearance in the office of the prosecutor, and hence, had received no official notice of Palumbo's present ap-

---

5. 28 U.S.C. § 2241 (1958) states:
   "(c) The writ of habeas corpus shall not extend to a prisoner unless * * *"
   *     *     *     *     *
   "(3) He is in custody in violation of the Constitution or laws or treaties of the United States; * * *."

6. Gailes v. Yeager, 324 F.2d 630 (3 Cir. 1963).

7. In his pro se appellate brief, Palumbo refers to his conviction on indictment 631 by stating:

"The rights to 'double jeopardy on retrial' are hereby reserved, and that this issue will be raised on a later date, in the State Court; with new evidence appended."

8. In its memorandum, *supra* note 1, the District Court held: "A review of the record compels the finding that petitioner did in fact waive his right to counsel and cannot now be heard to complain."

9. For the subsequent course of this case, see note 2 *supra*.

pearance. Nonetheless, he pointed out that he had notified Mr. Breitkopf by letter and discussed the matter personally with him.

Additionally, he apprised the court that this morning he had telephoned the office of Mr. Breitkopf, who, however, was elsewhere. Up "to this minute," according to Mr. Armstrong, Mr. Breitkopf had failed to return the telephone call, even though his son in answering the call stated that he would do so.

Next, Mr. Flaherty informed the court, in effect, that he was not serving as counsel for Wines,[10] since he was neither appointed to represent Wines nor advising him how to plead. Rather, he was, to quote him, "merely here this morning for the pleadings."

Wines then changed his plea to guilty. The court asked Wines, among other things: "As he [Mr. Flaherty] stated he did not advise you one way of [sic] the other. This is your own decision." To which Wines answered: "Yes." The court thereupon accepted Wines's plea of guilty.

Thereafter, Mr. Armstrong made known his non-representation of Palumbo by adopting, as if he "had reiterated them," the remarks of Mr. Flaherty regarding his not serving as counsel for Wines.[11] The assistant prosecutor, at this point, asked Palumbo if he wished to retract his former plea of not guilty to indictment 720 and now enter a plea of guilty. He answered: "That's right." A discussion concerning the pleas of Palumbo and Wines then occurred among the court, the assistant prosecutor, Mr. Armstrong, Palumbo and Wines.[12] It

---

10. Mr. Flaherty stated to the court in respect to his representation of Wines, as follows:

"There are a number of indictments against Mr. Wines and I appeared in one of the cases with Mr. Armstrong, a three day trial. I had not been appointed to represent him in the present proceeding. I had been notified this morning that he was coming in to plead and I am merely here this morning for the pleadings.

"I have not advised Mr. Wines to plead or not to plead. Mr. Wines had asked me whether or not there would be concurrent sentences. I told him I had no authority to say whether there would or would not. There are no arrangements made whatsoever with the prosecutor or the Court as to what the sentence may be if he takes this plea. I am not advising him to plead one way or the other and this procedure now is on his own behalf, and his own words would be the decision he makes."

11. For the remarks of Mr. Flaherty, see ibid.

12. The discussion was as follows:
"THE COURT: How old are you, Mr. Palumbo?
"DEFENDANT PALUMBO: Forty-five.
"THE COURT: Do you know the implication of withdrawing the plea of not guilty and pleading guilty:
"DEFENDANT PALUMBO: Yes Sir;
"THE COURT: All right, the plea will be accepted.
"MR. DWORKIN [Assistant Prosecutor]: Now, do I understand that the

court has permitted the defendant to withdraw his plea of not guilty heretofore entered to this indictment [720] and has permitted him to enter a plea of guilty? is that correct?
"THE COURT: In both cases.
"MR. ARMSTRONG: Would the Court permit a remark by me at this phase of the proceeding and to make inquiry of the defendant to determine if that plea is made by him freely and without any coercion or suggestion by me or promise by me appearing in this matter as I do in this capacity.
"THE COURT: Well, the Court will ask both defendants. This charge [sic] of plea is not made through any threat, fear of any kind, is that so, Sir?
"DEFENDANT PALUMBO: Yes Sir:"
        *        *        *        *        *
"MR. DWORKIN: * * * I understand you wish to retract the plea of not guilty at this time heretofore entered to this indictment and wish to enter a plea of guilty, is that correct?
"DEFENDANT PALUMBO: Yes Sir:
"THE COURT: You understand, Mr. Palumbo, the same applies here. In other words, no fear or threats or promises made?
"DEFENDANT PALUMBO: Yes Sir:
"THE COURT: No promises made and you are retracting the plea of not guilty and entering a plea of guilty?
"DEFENDANT PALUMBO: That's right."
        *        *        *        *        *
"THE COURT: Both defendants the Court understands had already been fur-

is apparent therefrom that Palumbo's age was 45; that he knew "the implication of withdrawing the plea of not guilty and pleading guilty"; that his plea was "not made through any threat, fear or any promises of any kind"; and that he already had been furnished copies of the indictments. The same determinations, in general, also were made pertaining to Wines.

At no time did the court or anyone else ask Wines if he wanted representation by counsel. Moreover, at no time did Palumbo comment that he wanted or did not want counsel. In short, even though the court thoroughly queried Palumbo on the voluntariness of his plea, no one said anything about whether Palumbo desired counsel. The court then remanded Palumbo and Wines until sentencing, which took place on June 15, 1956.[13]

Palumbo subsequently filed a habeas corpus petition in the Hudson County Court on which hearing was held June 13, 1958. In orally dismissing his petition, the court, among other things, rejected the argument that Palumbo did not have the assistance of effective counsel when he changed his pleas to guilty on indictments 632 and 720. From this ruling Palumbo appealed. The New Jersey Superior Court, Appellate Division, in denying his appeal, said that it would "affirm the judgment forthwith on the basis of [Palumbo's] waiver" of the right to counsel, were there no question as to the effect of the alleged inducement and promises by the prosecutor.[14] It then remanded for additional Trial Court findings on the question whether Palumbo had entered his pleas on the basis of threats or promises.[15]

After a rehearing, the Hudson County Court on April 26, 1960 made an unreported factual finding that there had been no threats or promises by the prosecutor. In an unreported decision the Superior Court, Appellate Division, on September 28, 1961, affirmed the Hudson County Court's denial of Palumbo's habeas corpus petition; the New Jersey Supreme Court denied certification on the merits on December 11, 1961 in an unreported order. Certiorari was also denied.[16] And thereafter the District Court for New Jersey, as already has been stated, denied Palumbo's petition for habeas corpus.[17]

### I.  Right to Counsel

A. Before considering the District Court's conclusion that Palumbo waived his right to counsel, we must first determine if, indeed, he had such a right under the facts and circumstances of this case.

The Superior Court, Appellate Division, stated: "It was necessary that defendant [Palumbo], as an indigent, be provided with counsel for the purpose of advice on deciding how to plead to the indictments." [18] Immediately afterwards it cited five state decisions whose nature made it appear that the court based its statement affording Palumbo the right to counsel on Art. I, par. 10 of the New Jersey Constitution of 1947 and on New Jersey Supreme Court Rule 1:12–9(a). The former, which is practically identical with the sixth amendment to the Federal Constitution, states: "In all criminal prosecutions the accused shall have the right  *  *  *  to have the assistance of counsel in his defense." The latter provides for the assignment of

---

nished copies of the indictment. Now, after having read it to you do you still wish to retract the plea of not guilty and enter a plea of guilty to indictment 720?
    "DEFENDANT WINES: Yes.
    "DEFENDANT PALUMBO: Yes."

13. See note 3, *supra*, for a statement of the sentences Palumbo received on indictments 632 and 720.

14. *In re* Application of Palumbo, 58 N.J. Super. 80, 90, 155 A.2d 571, 577 (App. Div.1959).

15. *Id.* at 92, 155 A.2d at 578.

16. Palumbo v. New Jersey, 371 U.S. 941, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962).

17. See note 1 *supra*.

18. *In re* Application of Palumbo, *supra* note 14, at 88, 155 A.2d at 576.

counsel for indigent persons charged with a crime.

◼ Moreover, Gideon v. Wainwright [19] has established that an indigent defendant in a state criminal prosecution has an unqualified Federal Constitutional right to be represented by counsel, unless he competently, intelligently, and voluntarily waives this right.[20] This decision expressly overrules Betts v. Brady,[21] which held that an indigent defendant in a state criminal prosecution had a constitutional right to be represented by counsel at trial only where special circumstances would make a denial thereof offensive to the common and fundamental ideas of fairness.

The right to counsel attaches not only at trial, but at any step of the proceedings where an accused needs an attorney's assistance. As Mr. Justice Sutherland stated: "He requires the guiding hand of counsel at every step in the proceedings against him." [22]

◼◼ We are convinced, further, that the guarantee of counsel rule as fully protects state criminal defendants who plead guilty as those who plead not guilty.[23] It may well be that such an accused would have pleaded differently if benefitted by the advice of counsel. However, a plea of guilty may be one of the factors considered in determining whether there has been a waiver of the right.

◼ Whether this safeguard applies to misdemeanors, or its state equiva- lency, has yet to be fully delineated. In any event, it now would apply at that critical step of a proceeding, such as is presented here, where an individual changes his plea to guilty to a charge of armed robbery.

B. But, at the time of Palumbo's change of plea to guilty on January 11, 1956, the Supreme Court had yet to decide *Gideon*. The question thus arises: whether we should view Palumbo as having had an unqualified right to counsel, as the last pronouncement of the Supreme Court now holds, or merely a right depending on special circumstances, which was the rule in effect on January 11, 1956.

◼ In invalidating a conviction because the State had refused in 1931 to provide the petitioner with the assistance of counsel at arraignment, though he had requested such help, this court refused to apply the special circumstances test.[24] Our brother, Judge Hastie, speaking for the court, reasoned that to look at this problem in terms of retroactivity is illusory. He stated:

"The present significance and utility of Gideon v. Wainwright will appear more clearly if we begin not with the illusory question of the 'retroactivity' of that decision, but with an examination and analysis of the judicial process involved in this case." [25] (Footnote omitted.)

Yet, even viewing this kind of problem in terms of retroactivity,[26] we are unable

---

19. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); for an informative article on Gideon, see Krash, *The Right to a Lawyer: The Implications of Gideon v. Wainwright*, 39 Notre Dame Law. 150 (1964).

20. See Bute v. Illinois, 333 U.S. 640, 675, 68 S.Ct. 763, 781, 92 L.Ed. 986, 1005 (1948).

21. 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).

22. Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932); see White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

23. See Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957).

24. United States ex rel. Craig v. Myers, 329 F.2d 856 (3 Cir. 1964).

25. *Id.* at 859.

26. See, e. g., Griffin v. Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891, 899 (1956), where Mr. Justice Frankfurter concurred in the judgment holding that a state must provide without charge a transcript of trial to an indigent defendant entitled to appeal. He, however, would have determined the decision by "recognize[ing] candidly the considerations that gave prospective content to a new pro-

to interpret *Gideon* as having only prospective effect. Rather, we agree with the decision by the Court of Appeals for the Second Circuit, sitting en banc, that the right to counsel rule proclaimed by *Gideon* is retroactive and protects state criminal defendants who plead guilty.[27] And it should be pointed out, Chief Judge Soboloff of the Court of Appeals for the Fourth Circuit stated in a concurring opinion that he would give *Gideon* retroactive effect.[28]

The Supreme Court has not expressly ruled that *Gideon* is retroactive in application.[29] Nonetheless, *Doughty v. Maxwell*,[30] as the Court of Appeals for the Second Circuit points out,[31] seems to require retrospective application of *Gideon*. The Supreme Court of Ohio, in rejecting a petition by Doughty, held that the prisoner had waived his right to counsel by pleading guilty in January of 1959 to a charge of rape.[32] In a per curiam opinion,[33] the Supreme Court reversed and remanded the Ohio judgment for further consideration in the light of *Gideon*.

But, the Ohio Supreme Court still refused to grant Doughty's petition.[34] It reasoned that *Gideon* was not dispositive, owing to the failure of Doughty to request assistance of counsel at the time of his guilty plea. The Supreme Court reversed this decision, on the basis of *Gideon* and Carnley v. Cochran,[35] in a per curiam order.[36] In addition to *Doughty*, the Supreme Court has remanded numerous other decisions in the light of *Gideon*.[37]

nouncement of law." *Id.* at 26, 76 S.Ct. at 594, 100 L.Ed. at 903. But see, Eskridge v. Washington Prison Bd., 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1961), which retroactively applied *Griffin*.

27. United States ex rel. Durocher v. La Vallee, 330 F.2d 303 (2 Cir. 1964). While the Court of Appeals for the Second Circuit denied retroactivity in the instance of illegal state search and seizure in the recent case of United States ex rel. Angelet v. Fay, Warden, etc., 2 Cir. 333 F.2d 12, June 11, 1964, it took pains to affirm its position in Durocher.
Commonwealth ex rel. Craig v. Banmiller, 410 Pa. 584, 588, 189 A.2d 875, 877 (1963), in refusing Craig's petition for habeas corpus, held *Gideon* is not retroactive; but United States ex rel. Craig v. Myers, 220 F.Supp. 762 (E.D.Pa. 1963), aff'd *supra* note 18, granted Craig's petition for habeas corpus, District Judge Body holding "there is no doubt at all" *Gideon* applies to cases prior thereto.

28. Jones v. Cunningham, 319 F.2d 1, 4–5 (4 Cir. 1963). The decision of the court expressly declined to rule on the retroactivity question, since it found denial of counsel had been unconstitutional even under the special circumstances test. *Id.* at 3. See Striker v. Pancher, 317 F.2d 780, 783–84 (6 Cir. 1963), where the dictum of Judge Prettyman states that *Betts v. Brady* has been overruled by *Gideon*, "and the law as announced in the later case must be viewed as the law in the prior period."

29. See dissent of Mr. Justice Harlan in Pickelsimer v. Wainwright, 375 U.S. 2, 3, 84 S.Ct. 80, 81, 11 L.Ed.2d 41, 42 (1963), where he states:
"I am unable to agree with the Court's summary disposition of [those] 10 Florida cases, and believe that the federal question which they present in common is deserving of full-dress consideration. The question is whether the denial of an indigent defendant's right to court-appointed counsel in a state criminal trial as established last Term in Gideon v. Wainwright, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799], overruling Betts v. Brady, 316 U.S. 455 [62 S.Ct. 1252, 86 L.Ed. 1595], invalidates his pre-*Gideon* conviction."

30. 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed. 2d 650 (1963).

31. United States *ex rel.* Durocher v. La Vallee, *supra* note 27, at 310.

32. Doughty v. Maxwell, 173 Ohio St. 407, 183 N.E.2d 368 (1962).

33. Doughty v. Maxwell, 372 U.S. 781, 83 S.Ct. 1106, 10 L.Ed.2d 139 (1963).

34. 175 Ohio St. 46, 191 N.E.2d 727 (1963).

35. 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

36. *Supra* note 20.

37. In United States ex rel. Durocher, *supra* note 27, at 311, the Court of Appeals, in quoting the late Judge Clark, states that subsequent to *Gideon*, the Supreme Court has remanded upwards of forty cases in

Applying *Gideon* retroactively could occasion some detrimental consequences. One of the more prevalent arguments is that many felons throughout the United States with recidivist tendencies may now obtain release. Only the future will reveal the true merits of this apprehension.

But, at about the time the Supreme Court considered *Gideon,* some 37 states apparently provided counsel for all indigent felon-defendants regardless of "special circumstances." [38] Some eight states provide counsel upon request.[39] And only in some parts of five other states, it appears, did the now repudiated *Betts* doctrine that there was no absolute right to counsel in non-capital cases prevail.[40] It, thus, may be that only a small minority of states need face the problem of freeing an inordinate amount of hardened criminals.

Moreover, despite the difficulties of obtaining witnesses and other evidence after a great time lapse, the states can retry some of the released individuals. And if a guilty verdict results, the courts may impose harsher sentences than they did originally. Fear of a longer sentence may even deter some prisoners from even initiating a habeas corpus application.

Yet, one could fairly deduce that individuals who present reasonable risks of ever becoming productive citizens will be set free because of *Gideon's* retroactive application. This unfortunate consequence, however, will disappear within a few years. It is, we suspect, in the nature of growing pains of a society dedicated to establishing an ordered sense of liberty for every individual, be he indigent or otherwise.

It is unnecessary to adopt the fiction that the fundamental justice inherent in due process always compelled the conclusion that an indigent defendant had an unqualified right to the assistance of counsel. But, whether a court convicted an indigent without counsel today, or January 11, 1956—as in the case before us—or at any other time, our present interpretation of due process demands one conclusion: he had an unqualified right to counsel, unless competently, intelligently, and voluntarily waived by him.

The rationale behind *Gideon*—the denial of right to counsel to an indigent precludes his receiving a fair judicial proceeding—applies as forcibly to criminal prosecutions of the past as today.[41] To give some a guarantee but to deny it to others, merely because of a fortuitous date, would be to give some the benefit of what is considered fundamental justice but to deny it to others. Such a concept is inconsistent with our notions of fairness.

Accordingly, whether by the reasoning that the whole question of retroactivity is illusory or by the reasoning that, in fact, *Gideon* should be retroactively applied, we hold that Palumbo had a fed-

light of *Gideon.* *E. g.,* Per Curiam Opinions, 372 U.S. 766–70, 773–80 (1963).

38. Kamisar, *The Right to Counsel and the Fourteenth Amendment: A Dialogue on "The Most Pervasive Right" of an Accused,* 30 U.Chi.L.Rev. 1, 17 (1962).

39. *Id.* at 18–19 (Maine, New Hampshire, Rhode Island, Vermont, Delaware, Pennsylvania, Maryland and Hawaii).

40. *Id.* at 19–20 (Alabama, Florida, Mississippi, North Carolina, and South Carolina).

41. "It is irrelevant that the judge's views of what constitutes a denial of due process may have changed since the occurrence of the events in suit, or that he or some other judge might have rendered a different decision had the same matter reached his court years earlier. The petitioner is entitled to the most competent and informed decision that the judge can now make whether there was fundamental unfairness in his past conviction. Our system is not so unenlightened as to require that in attaching *present* consequences to 1931 occurrences, a judge must ignore all of the insight that men learned in the law and observant of human behavior have acquired concerning the essentials of tolerable criminal procedure during the past 30 years." United States ex rel. Craig v. Myers, *supra* note 24, at 859.

eral constitutional right to counsel at the time he changed his plea to guilty.

## II. Waiver of Counsel

■ The transcript of the proceedings in which Palumbo changed his plea to guilty reveals that the court noted at the start that Mr. Armstrong was appearing for Palumbo. But, during the hearing, Mr. Armstrong showed that he was not counsel for Palumbo by adopting, for himself,[42] Mr. Flaherty's remarks about not representing Wines.[43]

Other evidence also reinforces this conclusion. In nowise does anyone dispute Mr. Armstrong's testimony that he was never assigned to this case. Moreover, he informed Palumbo of this and advised him to obtain counsel. Indeed, Mr. Armstrong emphasized to the court his attempts to notify a Mr. Breitkopf, who had appeared in the case, of the retraction of plea proceeding.

It is difficult to ascertain exactly what function Mr. Armstrong served during the proceeding in which Palumbo changed his plea. Yet, to conclude that he undertook to advise Palumbo, in the sense of being counsel, would be without basis. The Superior Court, Appellate Division, aptly phrased the appropriate conclusion in stating: "We are in accord with Palumbo's contention that he was not represented by counsel at the January 11, 1956 proceedings when he changed his plea to guilty on the two indictments."[44] We, accordingly, hold that Palumbo has met the burden of showing by a preponderance of the evidence that he did not have the advice of counsel.[45]

■ The court thus had to afford Palumbo his right to counsel. As already stated, he could of course waive this right, if it were done in a competent, intelligent and voluntary manner.

■ Whether there has been an effective waiver of the right to counsel must depend upon the facts and circumstances of a particular case, including the background, experience and conduct of the accused.[46] Undoubtedly, Palumbo was an experienced defendant—at that time his record recited 18 prior convictions. He, additionally, answered the questions of the court in such a way as to demonstrate that his plea of guilty was voluntary and made without threat, fear, or promise of any kind.

There was, however, no semblance of comment concerning the right to counsel either by the court, the assistant prosecutor, Mr. Armstrong, or Palumbo.[47] True, the court asked Palumbo: "Do you know the implication of withdrawing the plea of not guilty and pleading guilty?" To which he answered: "Yes, Sir." But to view this answer as reflecting a decision on the part of Palumbo to waive his right to counsel would be sheer speculation. We are unable to arrive at such a flawed deduction, especially pertaining to so fundamental a right where the "courts indulge every reasonable presumption against waiver."[48]

■ Authority does exist holding that where an accused personally pleads and, like Palumbo, does so understandingly, freely and voluntarily without asking for the assistance of counsel, a waiver of the right to be represented by counsel may be inferred.[49] Nevertheless we are of the opinion, because of Su-

---

42. *Supra* note 11.

43. For the remarks of Mr. Flaherty, see *supra* note 10.

44. *In re* Application of Palumbo, *supra* note 14, at 88, 155 A.2d at 576.

45. See Johnson v. Zerbst, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024–1025, 82 L. Ed. 1462, 1468–1469 (1938).

46. *Id.* at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466.

47. For the discussion by them, see note 12, *supra*.

48. Johnson v. Zerbst, *supra* note 46.

49. *E. g.*, Cundiff v. Nicholson, 107 F.2d 162, 163 (4 Cir. 1939). See Anderson, Wharton's Criminal Law and Procedure § 2012, at 151 (1957), which states: "In most jurisdictions a waiver will ordinarily be implied when the accused appears without counsel, and fails to request or indicate in any manner a desire that counsel be assigned to him."

preme Court decisions and the demands of justice, that these conditions are merely some of the many factors to be considered in determining if there has been a waiver. Standing alone, they would be insufficient for the court to imply waiver.

As Mr. Justice Brennan stated in *Carnley v. Cochran*,[50] wherein the Supreme Court reversed a Florida State decision:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."[51]

New Jersey Criminal Procedure Form 13A, which was not in effect at the time Palumbo changed his plea,[52] is a statement by a defendant that apparently indicates whether there has been a waiver of the right to counsel.[53] The Form, itself, provides that it is "to be completed in so far as applicable, and signed by the defendant prior to or at arraignment and filed with the clerk of the court." For this reason the present difficulty—whether a party makes an effective waiver of his right to counsel—may be alleviated in the future.[54]

When Palumbo changed his plea to guilty, no offer of counsel by the court, or anything in substitution thereof, took place. Palumbo, moreover, said nothing explicitly or implicitly, that could be interpreted as manifesting an intentional relinquishment of his right to counsel. Accordingly, he has met the burden of showing by a preponderance of the evidence that he did not make an effective waiver of his right to counsel.

Since Palumbo had an unqualified right to counsel at the time he changed his plea of not guilty to guilty on armed robbery indictments 632 and 720, and he did not make an effective waiver of this right, his guarantee of due process has been violated. Therefore, the decision of the District Court of New Jersey will be reversed and the case remanded for action consistent herewith.

50. *Supra* note 35.

51. *Id.* at 516, 82 S.Ct. at 890, 8 L.Ed. 2d at 77.

52. New Jersey Criminal Procedure Form 13A was adopted June 27, 1958 to be effective September 3, 1958; amended to be effective November 5, 1959.

53. This statement contains, among other things, the following:
"2. If you are not represented by an attorney
"a. Are you able to afford the services an attorney?—
"b. Is any member of your family able to assist you in obtaining an attorney?—
"c. Do you wish the opportunity to engage the services of an attorney?—
"d. If you are unable to afford an attorney are you aware of your right to have the court assign an attorney to represent you?—
"e. Do you want the court to assign an attorney to represent you?—"

54. But see State v. Leckis, 79 N.J.Super. 479, 192 A.2d 161 (App.Div.1963); Comment, 18 Rutgers L.Rev. 695, 698 (1964), in discussing State v. Leckis, states:
" * * * The court found no showing of an invalid waiver of counsel. But the court's solution is that 'counsel should be assigned to consult and advise with defendant so that he may be fully informed of the exact nature of the crime charged and his rights [despite his signing Waiver Form 13A].' Thus, the issue was resolved in the same manner as if an invalid waiver of counsel had been found * * * " (Footnotes omitted.)