Paul GOODWIN, Petitioner,

v.

Ray H. PAGE, Warden of the Oklahoma
State Penitentiary, Respondent.

No. 68–194–Civ.

United States District Court
E. D. Oklahoma.

March 6, 1969.

Milton Keen, Oklahoma City, Okl., for petitioner.

G. T. Blankenship, Atty. Gen., by Howard O'Bryan and H. L. McConnell, Asst. Attys. Gen. for State of Oklahoma, Oklahoma City, Okl., for respondent.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge.

This matter came on for consideration by the Court on the 24th day of January, 1969, and after hearing the evidence and argument of counsel, reviewing the excellent briefs and being fully advised in the premises, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. This is a Petition for Writ of Habeas Corpus filed by the petitioner, Paul Goodwin, against the defendant, Ray H. Page, Warden of the Oklahoma State Penitentiary, pursuant to 28 U.S.C.A. §§ 2241 and 2254.

2. Petitioner is presently incarcerated in the Oklahoma State Penitentiary, McAlester, Oklahoma, under a life sentence entered by the Superior Court of Seminole County, Oklahoma, on October 17, 1936, and a judgment and sentence entered by the District Court of Kingfisher County on April 30, 1963, assessing a sentence of five years in the State Penitentiary for the crime of robbery with firearms.

3. Petitioner filed a Petition for Writ of Habeas Corpus in the Oklahoma Court of Criminal Appeals and the Court did on July 31, 1968, deny said Petition. Goodwin v. Page, Okl.Cr.App., 444 P.2d 833. The Court of Criminal Appeals had before it the following contentions made by the petitioner:

(1) That petitioner was arrested in Pensacola, Florida, on July 20, 1936, and held for Oklahoma officers who removed him from Florida without extradition papers or waiver and re-turned him to Oklahoma, staying in various jails along the way.

(2) That on July 30, 1936, he was given an "automobile arraignment" before a justice of the peace who waived a preliminary hearing for the petitioner.

(3) That during all of this time until October 7, 1936, when the Court-appointed attorney visited petitioner at the jail, he had demanded, and was denied assistance of counsel.

(4) That there was considerable public excitement and prejudicial publicity about the crime which was the murder of a local peace officer, thus preventing a fair trial.

(5) Some of the jurors admitted having read newspaper articles about the crime.

(6) He was handcuffed when entering and leaving the Courtroom in front of jurors.

(7) He was denied effective assistance of counsel in that he only saw the Court-appointed counsel five days before trial, and then only for a short period of time; that counsel did not subpoena witnesses; that counsel failed to make an opening statement; failed to ask for a continuance or change of venue; placed no evidence before the Court; and did not keep his promise to appeal the conviction.

(8) That the Trial Judge did not advise him of his rights to appeal or his right to a Court-appointed attorney to perfect an appeal.

The Opinion of the Court of Criminal Appeals, supra, reflects that a hearing was had by the Court on February 8, 1967, at which time petitioner appeared with his attorney and was sworn and testified. No other testimony was before the Court.

The Court of Criminal Appeals answered petitioner's contentions substantially as follows:

(1) It is fundamental in Oklahoma that jurisdiction of a Court over the person of one physically before the

Court upon criminal charges is not impaired by the manner in which accused is brought before it, and the fact that arrest was unlawful or removal proceedings illegal would not affect such jurisdiction.

(2) It is true that the delay in taking the accused before the Magistrate may constitute an important element, when considered with other elements, in the denial of Constitutional and Statutory due process, however, there was nothing before it (Court of Criminal Appeals of Oklahoma) to indicate a prejudicial delay in taking petitioner before a Magistrate.

(3) Considerable adverse pretrial publicity does not ipso facto require a continuance, a change of venue or a new trial. A defendant can be assured a fair and impartial jury in the face of wide-spread adverse publicity through the voir dire examination of the jury. Nor does the fact that jurors have read adverse publicity disqualify prospective jurors if they can act impartially and fairly upon the matters to be submitted to them. However, in the absence of any record of the voir dire examination of the jury, it is impossible for this Court to find that the jury impaneled was not impartial. The burden of establishing the allegations of the Petition is upon the petitioner.

(4) Prior to the amendment of 22 O.S.1961, § 15 in 1953, which prohibits trying a defendant in chains and shackles, the law in Oklahoma made it a matter of the Trial Court's discretion regarding the wearing or placing shackles or leg irons on a defendant in order to maintain order and prevent acts of violence.

(5) That there was no evidence to support the serious allegation that petitioner was denied the effective assistance of counsel.

(6) The law in Oklahoma has long been that accused is entitled to counsel at all stages in criminal proceedings and where it appears, on appeal, that defendant has been denied the right to aid of counsel and has substantially been injured resulting thereby, the same will constitute grounds for reversal; that the record does not disclose any substantial injury to the petitioner due to the fact that he did not have an attorney prior to trial. And there is no evidence in the record that petitioner was convicted at trial on the basis of a confession extracted from him before counsel was appointed; that in the absence of a casemade of the trial, it would be impossible to determine such fact; that while in Oklahoma law a defendant is entitled to counsel at all stages of criminal proceedings, the absence of counsel at pretrial proceedings does not by and of itself amount to denial of due process without a showing of prejudicial injury.

(7) Petitioner was furnished counsel long before the trial date. We cannot, absent a record of the trial, find that counsel was incompetent based on allegations that he failed to call defense witnesses or put on evidence. Nor, can we conclude that because petitioner was convicted that his counsel was ineffective.

(8) The Court of Criminal Appeals further said that there might be some merit to the allegation that petitioner may have been denied due process in that he was not advised of his right to appeal with the assistance of Court-appointed counsel, in view of Wynn v. Page, 369 F.2d 930 (10 C.A.1966). However, the record is silent on whether the Judge advised petitioner of his right. Consequently, since the Judge is now deceased, it would be impossible to find out if he so advised petitioner absent the record. Likewise, with both the Trial Judge and the petitioner's trial counsel deceased, it is impossible to find out why an appeal was not perfected.

4. At the evidentiary hearing before the Court of Criminal Appeals only one witness testified and that was the petitioner, Paul Goodwin, and a transcript

of that testimony has been furnished to this Court and is marked Petitioner's Exhibit 13.

5. Petitioner could not take a direct appeal to the Court of Criminal Appeals from the judgment and sentence and could not take an appeal post conviction, because as the evidence before this Court shows there exists no transcript of the trial proceedings, nor can the Court Reporter's notes or additional material regarding petitioner's 1936 trial be located. On or about the 7th day of July, 1961, petitioner was paroled from the Oklahoma State Penitentiary under the life sentence imposed by the Superior Court of Seminole County, Oklahoma, and while on parole, petitioner committed an offense for which he was sentenced to a term of five years for robbery with firearms by the Judge of the District Court of Kingfisher County, Oklahoma, and his parole under the life term from Seminole County was revoked.

6. Having exhausted his available state remedies, petitioner is before this Court upon his Petition for Writ of Habeas Corpus and asserts briefly: (1) denial of effective assistance of counsel; (2) denial of a fair trial by an impartial jury because of prejudiced publications, affecting the rights of the petitioner; (3) denial of equal protection of the law; (4) use at his trial of an involuntary confession; (5) suppression by the prosecuting authorities of favorable evidence; (6) fundamental error in permitting the reading of a confession or written statement by a co-defendant at the trial while said co-defendant was present in the courtroom, thus denying petitioner the right to be confronted by witnesses to be used against him and to cross-examine said witnesses, and that the judgment and sentence of the Superior Court of Seminole County giving the petitioner a life sentence is void, and, therefore, petitioner has fully served the five year sentence from Kingfisher County, inasmuch as he was received at the Oklahoma State Penitentiary on April 30, 1963, to serve it and has been there since that date.

7. At the habeas corpus hearing in this case held on January 24, 1969, at McAlester, Oklahoma, petitioner called as a witness Mr. Walter Billingsley, an attorney at law who was the attorney for petitioner's co-defendant, Horace "Buster" Lindsey; T. G. Harrison, Wewoka, Oklahoma, Court Clerk for Seminole County for ten years; the petitioner, Paul Goodwin, and Mr. Criswell, Assistant County Attorney at the time of petitioner's trial and who participated in the trial of petitioner in Seminole County, Oklahoma. Also at the habeas corpus hearing petitioner introduced into evidence Exhibits 1 through 19, which among other things, included pertinent publicity in the Seminole, Oklahoma, newspapers before, during and after the trial. The Trial Judge, Court Reporter, Court-appointed attorney, newspaper reporter, County Sheriff and Police Chief were admittedly deceased.

8. The evidence before this Court shows, and the Court finds that petitioner requested counsel on numerous occasions while confined in seven different jails, two of which were in Oklahoma counties, for a total of 79 days before he was privileged to see an attorney other than the prosecutors; approximately six days after petitioner's arraignment and approximately 22 days after he had been arrested and placed in confinement, and during his absence and without his knowledge, the Trial Judge Guy C. Cutlip of Seminole County, Oklahoma, appointed a Wewoka, Oklahoma, attorney to represent petitioner; petitioner was not advised that an attorney had been appointed for him until 57 days after the date of the appointment; that on October 7, 1936, five days before the actual commencement of the jury trial, petitioner's Court-appointed attorney visited him for about five minutes in the jail at Wewoka, Oklahoma. The Court further finds that Mr. Walter Billingsley, the attorney for the co-defendant Lindsey, made an investigation of the facts

and during such investigation talked to a young woman who said she saw the shooting, which resulted in the death of the peace officer and that this young woman told him that Lindsey, the driver of the car, fired the shot that killed the officer; the prosecution knew of this witness, but petitioner did not; that the co-defendant Lindsey made three voluntary written statements to the prosecution or at the request of the prosecution, and in the written statements given by Lindsey the details of various other felonies committed by, or allegedly committed by petitioner and Lindsey were set forth. In the first and second written statements given by Lindsey he stated that he fired the fatal shots that killed the officer, while in the third written statement he stated that petitioner fired the fatal shots. Petitioner consistently denied firing the fatal shots and at no time made a voluntary statement. These written statements were taken, as above stated, by the prosecution but admittedly cannot now be located; however, it is clear from the evidence that the prosecution at the time of, and during the trial, had possession of all three of these written statements. At the trial the prosecution attempted to use as a witness the co-defendant, Horace "Buster" Lindsey, who was present in the courtroom during the entire trial with his attorney, Mr. Walter Billingsley. Mr. Billingsley advised the prosecution that he would not permit Lindsey to testify, and the Trial Judge then advised counsel that if Lindsey refused to testify, he would permit the prosecution to read to the jury the written statement Lindsey gave which stated that the petitioner here fired the fatal shot or shots. There is no record of the trial proceedings, but from the best evidence available it appears that strenuous objections were made to the reading of this statement by counsel for petitioner in the trial, but his objections were evidently overruled and the statement read to the jury by Jake Sims, Chief of Police, Seminole, Oklahoma, and petitioner's counsel was not permitted to offer into evidence Lindsey's contradictory statement in which he admitted shooting the officer. The written statement read to the jury given by Lindsey was the only evidence that the petitioner fired the fatal shot or shots. At this habeas corpus hearing certain copies of the Seminole Evening Reporter and the Seminole Producer, local daily newspapers, were received in evidence, but the State objected to the receipt thereof for the purpose of admitting what took place at the trial.

9. The evidence shows from the newspaper clippings introduced into evidence, and the Court finds that prior to and during the trial of the petitioner there was a great deal of sentiment and antagonism in Seminole County, Oklahoma, against the petitioner; at one time while in jail at Seminole, he was threatened by a son of the deceased with a pistol. Taking into consideration the totality of the publicity and circumstances, it is doubtful whether petitioner could have at the time received a fair trial in Seminole County.

After the police officer was shot and killed, Horace "Buster" Lindsey, petitioner's co-defendant, surrendered himself and made a voluntary signed written statement to the authorities, upon the advice of his mother, that he shot and killed the officer, and again while he was being held in the State Penitentiary at McAlester for safe-keeping, he confessed to being the killer. Later this same person gave another written statement wherein he stated, among other things, that petitioner shot and killed the officer, and this is the statement referred to before, which was read to the jury by the Chief of Police of the City of Seminole during petitioner's trial, and the only statement of which the jury was informed.

Mr. Walter Billingsley, who was attorney for Lindsey, petitioner's co-defendant, appeared before the Pardon and Parole Board at McAlester, Oklahoma, on September 19, 1949, on behalf of a prisoner by the name of Harry Bradbury. A question and answer statement was taken from Mr. Billingsley (Plaintiff's

Exhibit 15) wherein the following appears:

Q. "Understand that one from your County, Lindsey killed Chris Whitson in your County?"

A. "Yes, sir, one of them was named Lindsey, and I represented Lindsey, and since you mention that, I want to tell you what the facts are, because I don't think a living human being knows as much about it as I do. Lindsey killed him. He told me he did; * * * But that other boy did not have anything to do with killing Chris Whitson—than I did."

and in another interview on July 17, 1950, before the Pardon and Parole Board (Plaintiff's Exhibit 16) Mr. Billingsley appearing on behalf of petitioner here stated:

" * * * There was only one eye-witness, I don't remember her name, maybe Paul does remember the name; a girl running an eating place, * *. These two boys had driven up and ordered something * * *. The little girl was bringing it out or coming after the tray, and Chris Whitson drove up, got out and came up on the driver's side and when he did, Buster Lindsey reached over and opened the glove compartment and got out a gun as Chris Whitson walked up. The little girl heard Paul Goodwin say, 'Don't do that, Buster, don't do that.' "

This Court has known Mr. Billingsley for more than forty years and holds him in high esteem. Mr. Billingsley has been a prominent attorney in Seminole County all these years, a member of the State Legislature and Speaker of the House of Representatives of the State of Oklahoma. The Court has the utmost confidence in the truth of the statements made by Mr. Billingsley, and taking these statements and all of the other evidence before this Court, the Court is convinced that petitioner did not shoot and kill the deceased Whitson. Mr. Billingsley is presently acting as a State Special Judge in Seminole County, Oklahoma.

Mr. Criswell, who was Assistant County Attorney in Seminole County in 1936 and one of the prosecutors in this case, that is the case of the petitioner, testified in this case that he knew of the existence of the girl, Mary Clifton, and the prosecution intended to call her as a witness but could not locate her for the trial. The information filed in the Superior Court, Seminole County shows the names of the witnesses, which the State intended to use, and the appearance docket shows the names of witnesses subpoenaed by the State, and the name of Mary Clifton does not appear on either list.

The Court further finds that petitioner upon his arrest immediately asked for counsel; that when he was taken before the Seminole Justice of the Peace on July 30, 1936, for preliminary hearing, he asked for counsel, and counsel was denied; the Justice of the Peace stated that Goodwin did not need counsel, and he (Justice of the Peace) waived Goodwin's preliminary hearing. Though Goodwin did not waive his preliminary hearing, no such hearing was had.

Petitioner was then taken before the Judge of the Superior Court for arraignment on August 4, 1936, and the Judge was advised of his poverty, and petitioner asked for counsel but none was furnished. Petitioner was then given 24 hours to enter a plea to the charge.

The next day on August 5, 1936, with no counsel, although counsel had been requested, petitioner was brought before the Judge for arraignment and entered his plea of not guilty, at which time the Trial Judge set the date of trial and issued a summons for the jury panel.

On August 11, 1936, the Judge appointed counsel for petitioner without petitioner's knowledge, and petitioner did not learn that counsel had been appointed for him and did not see Court-appointed counsel until October 7, 1936, five days before trial, and then only for five minutes.

As heretofore stated, petitioner did not waive his right to a preliminary hearing or examination before the Justice of the Peace and was given no such hearing; likewise, the evidence shows that petitioner did not have the benefit of counsel before or at the time he was required to enter a plea to the charge before the Superior Court of Seminole County. During all this time, petitioner was denied the guiding hand of competent counsel, and without such advice petitioner could not knowingly and understandingly waive his right to a preliminary examination or a preliminary hearing before the Justice of the Peace where he could be confronted by the witnesses to be used against him.

As heretofore found by the Court, Counsel was appointed for petitioner on August 11, 1936, but did not go to the jail to see petitioner or confer with him until October 7, 1936, although counsel lived in Wewoka, Oklahoma, where petitioner was incarcerated in jail; Court-appointed counsel made no complaint to the Court that petitioner had had no preliminary examination, and the lack of preliminary examination was brought to the attention of the Judge by counsel for co-defendant Lindsey, and Lindsey was granted the right to a preliminary examination; Court-appointed counsel subpoenaed no witnesses; made no effort to procure a continuance of the case because of the alleged absence of Mary Clifton, the only eye-witness; made no effort to secure a change of venue because of the wide-spread adverse and prejudicial publicity in both newspapers published in Seminole, Oklahoma, wherein petitioner was referred to as "desperado," "bandit," "car thief," "ex-convict," etc. Court-appointed counsel filed a Motion for New Trial which was summarily overruled, without argument, to which no exception was taken; counsel gave no notice of intention to appeal although he promised petitioner he would appeal the conviction; and no appeal was taken, nor did counsel or the Court advise petitioner that the State would be required to supply a record of the trial at public expense. In the face of the glaring errors before and during the trial, petitioner did not receive adequate and effective assistance of counsel.

The Court further finds that at the trial of the petitioner, upon the co-defendant Lindsey's refusal to testify, the Trial Court permitted the prosecution to introduce into evidence a confession of Lindsey, read to the jury by the Chief of Police, in which it was stated that the petitioner shot the deceased Whitson, and which statement further related other acts of robbery, grand larceny, burglary, etc., and refused to admit into evidence after the prior admission of the damaging statement by Lindsey, an earlier confession of Lindsey wherein he stated that he was the one that killed the officer; petitioner was not confronted by the co-defendant Lindsey as a witness against him and had no opportunity to cross-examine him.

The Trial Judge compounded the effect and prejudice created by the written statement admitted into evidence and added dignity to it by permitting it to be read to the jury by the Chief of Police of Seminole County, Oklahoma.

## CONCLUSIONS OF LAW

■ 1. In Oklahoma a preliminary hearing or preliminary examination before a committing magistrate is a vital process in bringing those accused of crime to trial, and a denial of such preliminary hearing constitutes lack of due process under the Fifth and Fourteenth Amendments, and under the Bill of Rights of Oklahoma, Article II, Sections 17 and 20. See Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, and cases cited therein.

■ 2. A person charged with a crime in the State of Oklahoma and under the United States Constitution is entitled to counsel at every vital stage of the proceedings, and a denial of counsel at preliminary examination or preliminary hearing and at arraignment is a violation of the United States Constitution, Amendments V, VI and XIV, and

Oklahoma Constitution, Article II, Sections 17 and 20. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (C.A.2—1963—1964); United States ex rel. Craig v. Myers, 329 F.2d 856 (C.A.3—1964); Palumbo v. New Jersey, United States Court of Appeals for the Third Circuit, 334 F.2d 524; Berryhill v. Page, 349 F.2d 984 (C.A.10—1965); Shawan v. Cox, 350 F.2d 909 (C.A.10—1965); Wyatt v. State, 69 Okl.Cr. 93, 100 P.2d 283, and an unbroken line of Oklahoma decisions.

■ 3. Amendments V and VI of the United States Constitution are made mandatory upon the states by Amendment XIV of the United States Constitution.

■ 4. Under the United States Constitution the right of an accused to assistance of counsel means effective assistance by an attorney who gives the accused his complete loyalty and whose service is of such character as to preserve the essential integrity of the proceedings, and under the facts heretofore found by the Court, the Court concludes that Court-appointed counsel did not discharge his obligation to the accused in this case and failed to render effective assistance.

■ 5. Where two persons are charged with the crime of murder, and a separate trial is ordered, it is fundamental error to permit, under any guise, the reading to the jury of a written statement by the co-defendant who invoked the privilege against self-incrimination, which inculpates the defendant on trial, and reading such statement to the jury constitutes a denial of the Constitutional right of confrontation. See Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100; Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; United States Constitution, Amendments VI and XIV.

6. The judgment and sentence of life imprisonment upon the petitioner, entered by the Superior Court of Seminole County was null and void from its inception, and is held now to be null and void because of the denial of petitioner's constitutional rights. Such judgment and sentence is now and has always been a dead limb upon the judicial tree and does not now have, nor has it ever had any Constitutional or legal sanctity.

■ 7. Petitioner while serving a life sentence imposed by the Superior Court of Seminole County, Oklahoma, and while on parole, was convicted by the District Court of Kingfisher County, Oklahoma, to serve a term of five years in the State Penitentiary, and was received at the penitentiary on April 30, 1963, and has ever since been incarcerated in the State Penitentiary, has fully served such five year sentence and is entitled to immediate release therefrom by the Warden, respondent herein. To require the petitioner now to commence serving the sentence imposed by the District Court of Kingfisher County would clearly be unjust, inhuman and constitute cruel and unusual punishment under Amendment VIII of the United States Constitution, and in connection with what is said in conclusion 6 above, the five year sentence has been served.

■■ 8. A Federal Court, under 28 U.S.C. § 2254 should give due consideration to the State Court proceedings considered as a whole, however, where the evidence before the Federal Court shows by clear and convincing evidence that the factual determinations made by the State Court are erroneous, the Federal Court will then make its own determination. The State Court decision in this case is based largely upon the absence of the trial record in the Superior Court of Seminole County, Oklahoma, however, in such a situation where such trial record cannot be made available, a Federal Court will receive the best secondary

evidence available to arrive at the true facts.

9. The State Court Opinion, while recognizing petitioner's right to counsel at all stages of the proceedings, states that absence of counsel at preliminary hearing is not a denial of due process in absence of showing prejudicial injury. A showing of prejudicial injury is not a prerequisite in a capital case. Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114.

Therefore, based upon these Findings and Conclusions, an appropriate Order will be entered directing the respondent, Ray H. Page, Warden of the Oklahoma State Penitentiary, to release and discharge from custody and confinement the person of Paul Goodwin now held as a prisoner in said Penitentiary pursuant to a judgment and sentence in Case No. 439, Superior Court of Seminole County, Oklahoma, entered on October 17, 1936, and Case No. 986, District Court of Kingfisher County, Oklahoma, entered on April 30, 1963.